[No. B021772. Second Dist., Div. Three. July 1, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
OLUFEMI BABATUNDE OGUNMOLA, Defendant and Appellant.

276

## Counsel

Totaro & Shanahan, Maureen J. Shanahan and Michael R. Totaro for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Gary R. Hahn and Richard L. Walker, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

DANIELSON, J.—Olufemi Babatunde Ogunmola appeals from the judgment entered following a court trial that resulted in his conviction of two counts of rape (Pen. Code, § 261, subd. (4)). He was sentenced to state prison for the upper base term of eight years on count I, and a consecutive term of one-third the middle base term, or two years, on count II. He contends (1) the evidence is insufficient to support his convictions, and (2) the trial court erred in imposing the 10-year state prison sentence. We find the evidence sufficient, the sentence excessive, modify the judgment accordingly and affirm.

### Issues

Defendant, an obstetrician and gynecologist, was convicted of raping two of his patients in the course of gynecological exminations. He argues the evidence failed to show the victims were unconscious of the nature of the act at the moment of penetration, and, therefore, his conduct did not come within the provisions of subdivision (4) of Penal Code section 261, which defines rape as "an act of sexual intercourse accomplished with a person not the spouse of the perpetrator . . . . Where a person is at the time unconscious of the nature of the act, and this is known to the accused." Defendant

also urges the presence of an extended step at the base of his examination table rendered the victims' testimony that they were raped by him during examinations inherently improbable.

Defendant also contends that on this retrial on remand by the California Supreme Court, he cannot be subjected to a sentence greater than the eight-year term imposed following his prior trial.

## FACTS

In March 1979, defendant's patient, Ann C., consulted him following an automobile accident.[1] Defendant sent Ann C. to the hospital for X-rays; she returned to his office approximately one week later to discuss the results.

Defendant took Ann C. into his consultation room, where he told her she had merely suffered a sore or bruised muscle in the accident. He then stated he wished to examine her further, and took her to an examination room, where he left her. An assistant handed her a paper drape and gown and told her to undress. She did, and sat on the examination table using a three-wheeled stool to climb up on it. The assistant left, and defendant reentered the room and told Ann C. to lie back, which she did. He then placed her feet in stirrups. Her lower abdomen was covered by the paper drape.

Defendant, while seated, performed a pelvic examination with a speculum in place; he also pressed on Ann C.'s lower abdomen with one hand while the fingers of his other hand were inserted in her vagina. As he stood up after completing the examination, Ann C. noticed that defendant did not have his gloves on.

Defendant then moved his body close to hers, between her thighs, and inserted his penis into her vagina. Asked at what point she felt defendant's penis, Ann C. responded, "As soon as he moved against my body, and then inserted it." She testified that she was in "shock" and "could not believe it was happening." Asked at what point she became convinced the rape was in fact happening, Ann C. responded, "I think I was convinced when he initially inserted his penis, but to actually—it took me a few minutes to actually believe that this was taking place." She also stated she could not see defendant's penis or what he was doing, because of the drape, although she could see that he was moving his body forward and backward. Frightened because defendant was larger than she and "had a crazed look in his eyes," Ann C. considered and rejected the idea of trying to get up and run, put her arm over her face and prayed that the episode would soon be over.

---

[1] Ann C. was a relative newcomer to the state, and knew no other physician.

Some time later, defendant stated he was finished, and handed Ann C. some tissues with which she wiped his semen from her vaginal area.

After Ann C. dressed and left the examining room, defendant met her at the door to his reception area, put his arm around her and gave her a big hug.

Defendant's office assistant, Candi Bahner, observed that Ann C. was crying as she left the office.

In June 1980, defendant's patient, Beatris K., who had just discovered she was pregnant, went to defendant's office for an examination. She left her five-year old daughter in the waiting room, and entered the examining room, where she partially undressed and, using a step at the end of the table, climbed up and sat on it. Defendant entered and instructed her to lie down with her feet in the stirrups, which she did. Defendant then performed an examination, using a speculum, and took a swab of the cervical area. The nurse who had been present in the room left, and defendant, standing, continued the examination, placing his fingers in the patient's vagina while pressing on her lower abdomen. He moved his fingers in and out of her vagina a number of times, then pushed very hard on her abdomen and leaned forward, whereupon Beatris K. realized he had inserted his penis, rather than his fingers, into her vagina.

After moving his body back and forth a number of times, appellant stopped, backed away and told Beatris K. to get dressed. He left the room. Frightened and humiliated, Beatris K. wiped off liquid that was dripping down her legs, and dressed herself. Defendant met her at the waiting room door and asked to speak with her. Nervous and frightened, she accompanied him to his consultation room, where they discussed her pregnancy. Beatris K. had previously told defendant she wished to have an abortion, as she had suffered a number of miscarriages, and he stated that she would have to pay his fee right away. He also wrote her a prescription.

Defendant stood and walked around his desk toward Beatris K., who, nervous and anxious to leave, also stood. When defendant came very close to her, Beatris K. placed her hand on his shoulder and pushed him away. She then opened the door and left his office, taking her daughter to the parking lot, where Beatris K. sat in her car and cried.

## DISCUSSION

■ " 'When the sufficiency of the evidence is challenged on appeal, the court must review the whole record in a light most favorable to the judg-

ment to determine whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.' . . . In applying this test, we must 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People* v. *Fosselman* (1983) 33 Cal.3d 572, 578 [189 Cal.Rptr. 855, 659 P.2d 1144].)

■ The present case turns on the meaning of the phrase "unconscious of the nature of the act" as used in subdivision (4) of Penal Code section 261.

"Unconscious" means, among other things, "not knowing or perceiving: not aware . . ." (Webster's New Internat. Dict. (3d ed. 1966) p. 2486.) Among the definitions of "conscious" are: "perceiving, apprehending, or noticing with a degree of controlled thought or observation: recognizing as existent, factual or true . . . recognizing as factual or existent something external . . . " (*Id.*, at p. 482.) Synonyms include "aware," meaning "marked by realization, perception, or knowledge: CONSCIOUS SENSIBLE COGNIZANT . . . showing heightened perception and ready comprehension and appreciation: INFORMED, KNOWING, ALERT . . . CONSCIOUS may indicate impingement on one's mind so that one recognzes the fact or existence of something. . . ." (*Id.*, at p. 152.)

"Nature" means, among other things, "the essential character or constitution of something . . . ." (*Id.*, at p. 1507.)

■ It is settled that a victim need not be totally and physically unconscious in order for the statute defining rape as an act of sexual intercourse accomplished with a person who is at the time "unconscious of the nature of the act" to apply. (*Boro* v. *Superior Court* (1985) 163 Cal.App.3d 1224, 1228 [210 Cal.Rptr. 122].) In this context, unconsciousness is related to the issue of consent, which, in prosecutions under Penal Code section 261 is "defined to mean positive cooperation in act or attitude pursuant to an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved." (Pen. Code, § 261.6.)

In *People* v. *Minkowski* (1962) 204 Cal.App.2d 832 [23 Cal.Rptr. 92], the defendant doctor did not challenge the sufficiency of the evidence supporting the element of unconsciousness, where he "treated" several patients for menstrual cramps by having them bend over a table with their feet apart while he first inserted a metal instrument, and then, without the victim's realizing he was doing so, substituted his penis.

In *Boro* v. *Superior Court, supra,* 163 Cal.App.3d 1224, where the defendant doctor tricked the victim into consenting to an act of sexual intercourse with him as part of her medical treatment for a "dangerous, highly infectious and perhaps fatal disease," the court cited *Minkowski* as illustrative of certain traditional rules: "Thus, as a leading authority has written, 'if deception causes a misunderstanding as to the fact itself (fraud in the *factum*) there is no legally-recognized consent because what happened is not that for which consent was given; whereas consent induced by fraud is as effective as any other consent, so far as direct and immediate legal consequences are concerned, if the deception relates not to the thing done but merely to some collateral matter (fraud in the inducement).' (Perkins & Boyce, Criminal Law (3d ed. 1982) ch. 9, § 3, p. 1079.)" (*Boro* v. *Superior Court, supra,* 163 Cal.App.3d at p. 1228; see also *People* v. *Cicero* (1984) 157 Cal.App.3d 465, 485 [204 Cal.Rptr. 582].) Since the consent given in *Boro* was to an act of sexual intercourse, the defendant was not guilty of rape. "The victims in *Minkowski* consented, not to sexual intercourse, but to an act of an altogether different nature, penetration by medical instrument. The consent was to a pathological, and not a carnal, act, and the mistake was, therefore, in the *factum* and not merely in the inducement." (*Boro* v. *Superior Court, supra,* 163 Cal.App.3d at p. 1228.)

As the *Cicero* court observed, courts in other jurisdictions have consistently "applied the doctrine of fraud in the fact to uphold convictions for rape by force where physicians have accomplished intercourse on patients who thought instruments or fingers were being inserted in their bodies and who were therefore unaware an act of intercourse was taking place. [Citations.]" (*People* v. *Cicero, supra,* 157 Cal.App.3d 465, 485.) For example, in *State* v. *Ely* (1921) 114 Wash. 185 [194 P. 988], the defendant doctor had intercourse with the victim patient who supposed that he was examining her with his fingers. When she realized what he was doing, she got down from the examination table, called him a " 'darn fool' " and left his office. (*Id.,* at p. 989.) The court stated, at page 991: "The evidence in this case, if the prosecuting witness is to be believed, is to the effect that she supposed the doctor was examining her physically with his fingers and that she did not know at first that he was doing anything wrong. We are of the opinion that it was not necessary for her to be unconscious, in the sense that she had lost her senses, but that she might have all her faculties, and not know of the nature of the act at the time it was being done. The prosecuting witness testified that she did not know what the doctor was doing until after he had committed the crime."

Similarly, in the present case, the trier of fact could reasonably conclude from the testimony of the victim gynecological patients, who reposed great trust in their physician in placing themselves in positions of

great vulnerability from which they could not readily perceive his conduct toward them, that neither was aware of the *nature* of the act, i.e., neither consciously perceived or recognized that defendant was not engaged in an examination, but rather in an act of sexual intercourse, until he had accomplished sexual penetration, and the crime had occurred. (Pen. Code, § 263.)[2] Each of the victims, who had consented to a pathological examination, with its concomitant manual and instrumental intrusions, was "unconscious of the *nature* of the act" of sexual intercourse committed upon her by defendant, until the same was accomplished, and cannot be said to have consented thereto. Defendant's conduct on each occasion was clearly within the scope of subdivision (4) of Penal Code section 261, and constituted rape.

Defendant next contends the physical configuration of the setting in which the rapes occurred made it highly improbable that the events could have unfolded as the victims described in their testimony.

■ " 'Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the fact upon which a determination depends. [Citation.]' [Citations.]" (*People* v. *Thornton* (1974) 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267] (disapproved on another point in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1]).)

■ Defendant urges the presence of a step at the foot of his examination table precluded his having raped the victims in the manner described by them. The record shows this step was retractable. According to defendant's assistant, Candi Bahner, defendant generally pushed in the step with his foot just prior to conducting his bimanual examination of a patient. Whether or not the evidence established that Bahner was present at either of the examinations here in question, the trial court could reasonably infer

---

[2] Penal Code section 263 provides, in part: "Any sexual penetration, however slight, is sufficient to complete the crime." In *People* v. *Karsai* (1982) 131 Cal.App.3d 224, 232 [182 Cal.Rptr. 406], the court explained: "The penetration which is required is sexual penetration and not vaginal penetration. Penetration of the external genital organs is sufficient to constitute sexual penetration and to complete the crime of rape . . . ."

from her testimony that defendant pushed the step out of his way prior to raping the victims.

Finally, defendant contends, and respondent concedes, the trial court erred in imposing an aggregate 10-year prison term on this retrial, as an 8-year term had been imposed following his first trial. (*People* v. *Collins* (1978) 21 Cal.3d 208, 216-217 [145 Cal.Rptr. 686, 577 P.2d 1026].) The judgment will be modified accordingly.

## DECISION

The judgment is modified by striking therefrom the consecutive term imposed for the rape charged in count II of the information. As so modified, the judgment is affirmed.

Klein, P. J., and Lui, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 14, 1987.