[No. D049020. Fourth Dist., Div. One. Sept. 21, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID EDWARD STUEDEMANN, Defendant and Appellant.

**4**

COUNSEL

Milton J. Silverman for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette and Gary W. Schons, Assistant Attorneys General, Garrett Beaumont and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

McDONALD, Acting P. J.—A jury convicted defendant David Edward Stuedemann of rape by a foreign object on an unconscious person (Pen. Code, § 289, subd. (d)(3))[1] and oral copulation on an unconscious person (§ 288a, subd. (f)(3)). The court suspended imposition of sentence and granted probation subject to numerous conditions, including a condition Stuedemann spend one year in county jail. On appeal, Stuedemann asserts the evidence was insufficient to support his convictions for those offenses because the uncontradicted evidence showed the victim, Griselda R., was not unconscious within the meaning of those sections at the time of his conduct.[2]

## FACTUAL BACKGROUND

The objective facts are largely undisputed. Griselda met Stuedemann at a swap meet at which he was offering massages. She was satisfied with his massage, and she subsequently made an appointment for a massage at his place of business.

When Griselda arrived at his place of business, Stuedemann was alone in his office. He instructed her to remove all her clothes except for her underwear. Over the course of the next two hours,[3] Stuedemann gave Griselda a massage that culminated in the charged conduct.

The massage began with Stuedemann instructing Griselda to lie facedown on a table. He covered her with a sheet and began massaging her back. At

---

[1] All statutory references are to the Penal Code unless otherwise specified.

[2] Stuedemann raises numerous other claims on appeal. He asserts the standard Judicial Council of California Criminal Jury Instructions addressing sexual offenses against an unconscious victim, at least insofar as those instructions apply to victims unconscious because of fraud in fact, are fatally flawed because the instructions omit fraud in fact concepts while arguably replacing those concepts with fraud in the inducement concepts. He also asserts related rulings that created instructional deficiencies, evidentiary error, and that the court erroneously refused to investigate jury misconduct. We do not reach those issues because of our disposition.

[3] Although the massage was originally scheduled for one hour, it lasted nearly two hours.

one point, Stuedemann moved her panties to one side to massage her buttocks. When he was finished massaging her back, he instructed Griselda to lie on her back and, when she was face up, he put a mask over her eyes.[4]

While Griselda was on her back, Stuedemann initially kept the sheet in place to cover her while he massaged her. However, as the massage progressed, Stuedemann lowered the sheet and, without saying anything, massaged her breasts and nipples. She said nothing to him about it.[5] He then lowered the sheet further and began massaging her abdomen. He pulled down her panties and twice inserted his finger into her vagina. He then orally copulated her, at which point Griselda sat up quickly and told him to stop. Stuedemann stopped, said "I'm sorry," and left the room. He did not tell her that he was going to digitally penetrate or orally copulate her.

Griselda dressed, went to the reception room, and spoke briefly with Stuedemann before leaving. That evening, Griselda spoke with a friend and then went to the police. The following morning, she made a telephone call to Stuedemann that police recorded. During the call, he admitted digitally penetrating and orally copulating Griselda. Stuedemann apologized, said his conduct was "completely uncalled for" and "inappropriate," and said he had got "lost in fantasy" and assured Griselda the incident was not her fault.

ANALYSIS

### The Evidence to Support Guilty Verdicts on the Charged Offenses

Stuedemann, noting the evidence was uncontradicted that Griselda was sentient throughout the massage, argues there is no substantial evidence supporting convictions for sexual offenses against an unconscious person. When assessing a claim of insufficiency of evidence, we review "the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618].)

Under the statutory scheme, a person who commits a proscribed sexual act on a victim who "is at the time unconscious of the nature of the act

---

[4] The defense expert testified he covers his clients' eyes and administers aromatherapy to enhance relaxation.

[5] Griselda testified she was uncomfortable with his touching her breasts and nipples but said nothing because she thought it was part of the therapy.

and this is known to the person committing the act" is guilty of the charged offense. (§ 288a, subd. (f) [oral copulation]; § 289, subd. (d) [foreign object penetration].) Both statutes provide a victim is "unconscious of the nature of the act" when the victim is "incapable of resisting because the victim meets one of" four qualifying conditions, including that the victim "[w]as not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraud in fact." (§§ 288a, subd. (f)(3), 289, subd. (d)(3).) The statutes *also* deem a victim to be "unconscious of the nature of the act" when unable to resist because unconscious or asleep (§ 288a, subd. (f)(1); § 289, subd. (d)(1)); they are not limited to victims unconscious in the ordinary or colloquial sense. A victim is also deemed "unconscious of the nature of the act" when unable to resist because unaware or not cognizant the act had occurred (§ 288a, subd. (f)(2); § 289, subd. (d)(2)) or the victim was unaware of the essential characteristics of the act because the perpetrator fraudulently represented the sexual act served a professional purpose when it did not (§ 288a, subd. (f)(4); § 289, subd. (d)(4)). The prosecution in this case was based on the theory that Griselda was unconscious because of Stuedemann's fraud in fact.

However, the statutory language does not further define fraud in fact, or illuminate how this species of fraud deprives a victim of the requisite awareness or cognizance of the essential characteristics of the act that would keep the victim from resisting. As the court observed in *People v. Ogunmola* (1987) 193 Cal.App.3d 274 [238 Cal.Rptr. 300], "[i]n this context, unconsciousness is related to the issue of consent . . ." (*id.* at p. 279), because proof that a person with sufficient capacity consented to the defendant's sexual touching would ordinarily be fatal to a prosecution under sections 288a and 289. Accordingly, we examine the case law to distill the characteristics of fraud in fact to assess its relationship to the issue of consent.

█ When lack of consent is a necessary element of a crime, the fact the defendant employed fraudulent misrepresentations to induce the victim to consent to the proscribed act ordinarily does not vitiate the consent to supply the required element of nonconsent. (*People v. Harris* (1979) 93 Cal.App.3d 103, 114 [155 Cal.Rptr. 472]; accord, *People v. Donell* (1973) 32 Cal.App.3d 613 [108 Cal.Rptr. 232]; *People v. Cook* (1964) 228 Cal.App.2d 716, 718 [39 Cal.Rptr. 802] ["fraudulently induced consent is consent nonetheless . . ." and barred guilty verdict under Veh. Code, § 10851].) However, the courts have distinguished between "fraud in fact" and "fraud in the inducement," concluding the former *will* vitiate consent even though the latter does not. (See *People v. Harris, supra*, 93 Cal.App.3d at pp. 113–114.) █ The *Harris* court described the distinction between those types of fraud as follows: "On the issue of consent, from an analytic standpoint, there are two kinds of fraud: fraud in the fact and fraud in the inducement. The distinction between the two is as follows: in fraud in the fact, the victim is fraudulently induced

to consent to the doing of act X; the perpetrator of the fraud, in the guise of doing act X, actually does act Y; in fraud in the inducement, the victim is fraudulently induced to consent to the doing of act X and the perpetrator of the fraud does commit act X. [¶] Fraud in the fact, it has been said, vitiates consent. [Citation.] It appears equally reasonable to say that where there is fraud in the fact, there was no consent to begin with. Consent that act X may be done is not consent that act Y be done, when act Y is the act complained of. [¶] On the other hand, fraud in the inducement does not vitiate consent. [Citation.] '[T]he basic common law rule [is] that, unless there is statutory language to the contrary, whenever lack of consent is a necessary element of a crime, the fact that consent is obtained through misrepresentation will not supply the essential element of nonconsent.' [Quoting *People v. Cook, supra,* 228 Cal.App.2d at p. 719.]" (*Ibid.*)

▮ Thus, the concept of fraud in fact appears limited to those narrow situations in which the victim consented to the defendant's act but, because the victim believed the essential characteristics of the act consented to were different from the characteristics of the act the defendant actually committed, the victim was incapable of resisting the act actually committed because the victim was ignorant (or "unconscious") of the true nature of the act permitted. For example, in *People v. Minkowski* (1962) 204 Cal.App.2d 832 [23 Cal.Rptr. 92], the defendant doctor obtained the victims' consent to a medical procedure that involved insertion of an instrument into their vaginas. While the victims were bent over a table and facing away from the doctor, the doctor removed the instrument and surreptitiously replaced it with a different object. The victims underwent several "examinations" involving the same conduct and did not realize until their final visits that the defendant had inserted his penis into them. (*Id.* at pp. 837–839.) The court concluded this evidence permitted convictions under the statute proscribing penetration of a victim who was " 'at the time unconscious of the nature of the act.' " (*Id.* at pp. 842–843.)

▮ In contrast, when the victim consents to the defendant's act with full knowledge of the essential characteristics of the act, a conviction under the unconscious-due-to-fraud-in-fact concept cannot stand even though the victim was induced to consent by fraudulent representations as to the benefits resulting from the act. Thus, in *People v. Harris, supra,* 93 Cal.App.3d 103, the defendant claimed the victim had consented to a wager that required her to have intercourse if she lost, but the victim was unaware the game was rigged to ensure she lost. (*Id.* at pp. 110–111.) The court concluded the jury instructions were inadequate because the instructions permitted the jury to convict if they found her consent was given " 'under the influence of fraud' " (italics omitted), but fraud in the inducement did not vitiate her consent to the intercourse. (*Id.* at pp. 113–117.) Similarly, in *Boro v. Superior Court* (1985) 163 Cal.App.3d 1224 [210 Cal.Rptr. 122], the court found the "unconscious

of the nature of the act" provision inapplicable where the victim consented with knowledge of the true nature of the act she permitted, and the fact her consent was obtained based on the fraudulent representation the act was medically beneficial did not make the victim unconscious of the nature of the act. (*Id.* at pp. 1227–1231.)

■ The foregoing suggests that fraud in fact has a limited operation. It functions only when consent to the proscribed act would otherwise have barred prosecution for the offense but the law deems the consent nullified because the victim consented or cooperated (was "incapable of resisting") because of her ignorance ("unconsciousness") of the true nature (the "essential characteristics") of the act. (Cf. *People v. Giardino* (2000) 82 Cal.App.4th 454, 460–461 [98 Cal.Rptr.2d 315] [various provisions of sexual offense statutes define when actual consent will be nullified or deemed invalid].) The consent will be deemed null under such circumstances because "where there is fraud in the fact, there was no consent to begin with. Consent that act X may be done is not consent that act Y be done, when act Y is the act complained of." (*People v. Harris, supra,* 93 Cal.App.3d at p. 114.)

Applying this framework here, the evidence does not support a conviction under the unconsciousness provisions of sections 288a, subdivision (f)(3) or 289, subdivision (d)(3). There is no evidence Griselda consented or cooperated (was "incapable of resisting") because of her ignorance of the true nature of the acts performed by Stuedemann. To the contrary, she did not permit Stuedemann to orally copulate or digitally penetrate her believing the copulation or penetration was something other than a sexual copulation or penetration; instead, she immediately recognized the acts for what they were and expressed her nonconsent.

The People, relying on *People v. Ogunmola, supra,* 193 Cal.App.3d 274, argue there was substantial evidence to support the conviction in this case. In *Ogunmola,* as in *Minkowski,* the defendant doctor induced the victims to consent to medical examinations involving manual and instrumental penetration and, as an apparent continuation of the examination, surreptitiously replaced the instrument with his penis. The victims did not realize the defendant had inserted his penis into them until after the penetration had been completed. *Ogunmola,* noting that *Minkowski* and out of state cases had uniformly " 'applied the doctrine of fraud in the fact to uphold convictions for rape by force where physicians have accomplished intercourse on patients who thought instruments or fingers were being inserted in their bodies and who were therefore unaware an act of intercourse was taking place' " (*Ogunmola, supra,* 193 Cal.App.3d at p. 280 [quoting *People v. Cicero* (1984) 157 Cal.App.3d 465, 485 [204 Cal.Rptr. 582]]), concluded a victim may be fully conscious in the ordinary sense of the word but nevertheless be unable

to resist under the "unconsciousness" provisions where the perpetrator's fraud in fact made the victim unaware or not cognizant of the essential characteristics of the sexual act until after it had occurred. *Ogunmola* concluded substantial evidence supported conviction for rape under the "unconsciousness due to fraud in fact" provision because "[e]ach of the victims, who had consented to a pathological examination, with its concomitant manual and instrumental intrusions, was 'unconscious of the *nature* of the act' of sexual intercourse committed upon her by defendant, until the same was accomplished, and cannot be said to have consented thereto." (*Ogunmola*, at p. 281.)

The People contend that the requisites for unconsciousness because of fraud in fact were met in this case because Griselda consented to a massage but was subjected to digital and oral copulation and, under *Ogunmola*, was unconscious of the nature of the acts. Stuedemann counters that under *Ogunmola*, the penetration must be with the victim's consent but the instrument of the penetration is something different from the instrument to which consent was given; here there was no consent to any penetration. The People at oral argument agreed their application of *Ogunmola* to the facts of this case is an expansion of the current understanding of unconsciousness because of fraud in fact.

██ Unlike *Ogunmola* and its predecessors, there was no evidence Griselda consented to anything resembling the acts undertaken by Stuedemann. Although Griselda consented to a massage, the result of which made her vulnerable to Stuedemann's acts that overstepped the boundaries of her consent, the evidence showed she was fully aware of the nature of Stuedemann's acts when those acts transgressed the boundaries and was capable of (and did) express her nonconsent and resistance to the conduct. We conclude that Stuedemann's "conduct, reprehensible though it was, did not violate [sections 288a, subdivision (f)(3) or 289, subdivision (d)(3) because Griselda was not unconscious due to Stuedemann's fraud in fact, the only theory asserted by the prosecution.] If there is a statutory oversight in this area of the penal law, the Legislature may address it." (*Mathews v. Superior Court* (1981) 119 Cal.App.3d 309, 312 [173 Cal.Rptr. 820].)[6]

---

[6] Rather than reversing the judgment, it may be modified to find Stuedemann guilty of two counts of battery (§§ 242, 243, subd. (a)). Although Stuedemann's convictions for violating sections 288a, subdivision (f)(3) and 289, subdivision (d)(3) must be reversed, an appellate court may reduce a conviction to a lesser included offense if the evidence supports the lesser included offense but not the charged offense. (*People v. Howard* (2002) 100 Cal.App.4th 94, 99 [121 Cal.Rptr.2d 892]; *People v. Rivera* (2003) 114 Cal.App.4th 872 [8 Cal.Rptr.3d 141]; § 1181, subd. 6.)

In the proceedings below Stuedemann conceded, and it appears to be undisputed, the evidence supported convictions for misdemeanor battery (§§ 242, 243, subd. (a)) as lesser included offenses to the charged offenses. (Cf. *County of Santa Clara v. Willis* (1986) 179

## DISPOSITION

The judgment is reversed.

McIntyre, J., and Irion, J., concurred.

---

Cal.App.3d 1240, 1251 & fn. 6 [225 Cal.Rptr. 244].) Under such circumstances, we " 'may reduce the conviction to a lesser degree and affirm the judgment as modified, thereby obviating the necessity for a retrial. [Citations.]' [Citation.]" (*People v. Edwards* (1985) 39 Cal.3d 107, 118 [216 Cal.Rptr. 397, 702 P.2d 555].) However, neither the People nor Stuedemann wish this court to exercise its discretion in this manner. We therefore do not reduce Stuedemann's convictions to the lesser included misdemeanor offenses of battery (§§ 242, 243, subd. (a)).