[No. B232192. Second Dist., Div. One. Feb. 28, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
JAE JEONG LYU, Defendant and Appellant.

**COUNSEL**

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Scott A. Taryle and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—Jae Jeong Lyu was convicted after a court trial of sexual penetration by a foreign object of an unconscious person, oral copulation of an unconscious person, and sexual battery. He appeals, arguing that his convictions of sexual penetration and oral copulation of an unconscious person are not supported by substantial evidence. We agree.

## BACKGROUND

An information filed July 8, 2010, charged Lyu with two counts of sexual penetration by a foreign object of an unconscious person, in violation of Penal Code section 289, subdivision (d),[1] two counts of oral copulation of an unconscious person, in violation of section 288a, subdivision (f), two counts of sexual battery by fraud, in violation of section 243.4, subdivision (c), and four counts of sexual battery, in violation of section 243.4, subdivision (e)(1). The information alleged two separate incidents, each against a different victim, on November 8, 2009, against Trish B.,[2] and on April 7, 2009, against Shanah R. Lyu pleaded not guilty to all counts.

During Lyu's jury trial, the court dismissed the two counts of sexual battery by fraud. The court declared a mistrial on October 29, 2010, when the jury was unable to reach a verdict on the remaining counts. Both parties agreed to a court trial before a different judge.

Just before the court trial, the court granted Lyu leave to represent himself, with his attorney from the jury trial as standby counsel. At trial, Trish B. testified that on November 8, 2009, she went to a massage parlor in Los Angeles called Man Han Tang for a foot massage. She had been there once before. She understood that during a foot massage she would sit in a chair with her feet in a bucket of water and lean forward, to get a massage on her back, neck, shoulders and feet, and expected it to cost $20. She waited for a massage therapist to arrive, and then was directed to go with Lyu to get the massage. They spoke briefly in English.[3] There were five other people in the front room, giving foot massages to clients in reclining chairs.

Trish B. sat in a chair and Lyu began to massage her. Trish B. taught yoga and fitness classes and needed regular massages, so she was used to the process and noticed nothing unusual at first. She had been teaching many classes and was unable to be comfortable or to relax in the sitting position, so

---

[1] Unless otherwise indicated, all subsequent statutory references are to the Penal Code.

[2] The information mistakenly referred to her as Trisha B.

[3] Lyu is Korean and had a Korean interpreter throughout the trial.

either she or Lyu suggested a "laydown massage," and they moved to the back room. The back room was open and contained a series of massage beds. A woman was giving a man a massage on one of the beds, and the lights were on.[4]

Trish B. undressed underneath a privacy sheet and lay facedown, covered with the sheet. She had told Lyu her lower back was sore. Lyu massaged her right leg (which Lyu had exposed so it could receive the massage), going up and down the entire leg a couple times, and twice inserted one or two fingers inside her vagina. Trish B. hit Lyu's torso and said, " 'no' or 'what are you doing,' " and he scurried around the bed and "did something else and just started acting really weird." She "froze" and was frightened, because she did not know what Lyu was capable of, and she thought: "How do I get out of here safely?" Trish B. turned over onto her back, thinking about how to get her things, then Lyu moved to the end of the bed where her feet were, moved the sheet back, and put his mouth on her vagina ("the next thing is his mouth is down there"). Trish B. sat up and told Lyu to leave the room, but he stood there and looked at her without saying anything while she got dressed, keeping herself covered with the sheet. Trish B. was in "pure fear," wondering if Lyu would follow her out to her car, and concerned only about getting out of there safely.

Lyu told Trish B., "I give you free two-hour massage" and picked up her purse, putting his "Healing Hands" business card inside. She grabbed her bag and Lyu walked her out to the front desk with his hands "clenching down into [her] shoulders." Trish B. did not say anything to anyone in the front lobby, because she just wanted to pay and "get out of [there]" without hassle or conflict. She did not have enough cash, and she took out her card to pay, but the woman told her it was cash only and there was an ATM down the street. Trish B. thought, "there's no way I'm leaving here and coming back in here." The massage was about $30, and she only had $25 or so in cash. She pulled out what she had, and Lyu paid for the remainder of the massage and said, "I got this, I got it." Trish B. walked out, closed the door behind her, went to her car and left, driving away as fast as she could. She was still in shock, and when she got onto the freeway she began to cry and called a friend. She wanted to forget what had happened, but she thought about the other women to whom Lyu might do the same thing, and three days later she called the police.

Trish B. denied having gone to Man Han Tang for a sexual massage, conveying any interest in sexual contact with Lyu, masturbating or moaning

---

[4] Although the man and the female masseuse left shortly after Lyu and Trish B. entered the back room, it remained open and others came in and out to empty buckets of water from the foot massages.

in Lyu's presence, asking him to put his fingers in her vagina, or asking for or consenting to his mouth on her vagina.

Trish B. spoke to Los Angeles Police Department (LAPD) Detective Shumaker and told him what had happened. On December 2, 2009, Detective Shumaker asked her to make a "pretext call" to the number on the business card, to get Lyu to make an admission. When someone picked up, she recognized Lyu's voice. The tape of the phone call was played in open court. Trish B. told Lyu, who said he remembered her, that she wanted another massage, but first she wanted an apology for putting his fingers in and his mouth on her vagina. Lyu apologized for both and promised to give her just a massage. They agreed to meet at Man Han Tang.[5] Lyu promised, "I'm careful for you," and "I don't want any motion if—if you don't want." He remembered touching her before, and when she said she was upset when she left he said, "Yeah, yeah, yeah. Sorry, sorry, sorry." Lyu agreed that Trish B. had not asked for that contact, and had pushed him away before he put his mouth on her. He remembered that he had done that, and stated: "I said I apologize to you."[6]

After the prosecution rested, Lyu requested that his standby counsel represent him, and the court granted the request. Defense counsel moved to dismiss the counts charging sexual penetration by a foreign object on an unconscious person and oral copulation of an unconscious person, because "Trish B. . . . [was not] unconscious of the nature of the act at the time the acts were . . . allegedly committed." The court denied the motion.

The parties stipulated that while Lyu was being transported to jail, he stated, "I touched her [(Trish B.)] sexually," and explained: "She wanted it. She took my hand and placed it in her private part. I made a mistake because I touched her sexually. My heart was beating fast. I was very excited. That was the first time touching."

Lyu testified in his own defense. He worked part time as a masseuse, and received a telephone call on November 8 to come to Man Han Tang, where Trish B. was assigned to him for a foot massage. When during the foot massage Trish B. complained of pain in her right thigh, he recommended a combination massage and they moved to a room with a bed. Lyu asked Trish B. to change her clothes, but she did not because she thought the clothes supplied by the massage parlor were dirty. She got off the bed and undressed. Trish B. then lay down on her stomach and Lyu covered her with a folded towel.

---

[5] Lyu was arrested when he arrived at the massage parlor for the appointment.

[6] Shanah R. also testified, but because the trial court acquitted Lyu of the charges related to Shanah R., we do not detail any of the testimony regarding Shanah R.

When Lyu was massaging Trish B.'s thigh, she stretched her legs "so that [his] hand could be directed to her private area," and started to moan. Lyu asked in English. "May I help you?" and she did not answer. He asked again and Trish B. said, "yes," and "somehow guided [his] hand so it could be directed to the area." While Lyu had his finger inside Trish B.'s vagina, the owner of the shop came in the room. Lyu told Trish B. to be quiet. The owner asked Trish B. if she was okay, and she said yes. The owner left the room and Lyu "went on with the thing that [he] was doing," while Trish B. rubbed his crotch to arouse him. Trish B. then had an orgasm, and Lyu orally copulated her.

Earlier during the massage, Trish B. told Lyu he had to give her $300. Lyu said she had to give him $300 "if you enjoy with me." He offered her a two-hour free massage and put his business card into her purse.

After Lyu orally copulated her, Trish B. got up, hugged him, and kissed him on the cheek to thank him. Lyu told her to put her clothes on and went out to wait for her at the counter. After she came out of the back room, she said, "Fantastic." After the owner told Trish B. that she could not pay with a credit card, there was a dispute about the price of the massage. Trish B. paid the full price and gave Lyu a $4 tip. Trish B. then went to the bathroom. When she came out she asked Lyu if he knew a yoga instructor, and then she left.

Trish B. called Lyu on December 2, 2009, and told him she wanted to meet at Man Han Tang for another massage. He did not understand all of the phone conversation, but did understand that Trish B. wanted a two-hour free massage and wanted him to make an apology first. While Lyu was waiting in the Man Han Tang parking lot for Trish, he was arrested.

The trial court found Lyu not guilty of the counts relating to Shanah R., but found Lyu guilty of one count of sexual penetration of an unconscious person (count 1), one count of oral copulation of an unconscious person (count 2), and two misdemeanor counts of sexual battery (counts 7 and 9) relating to Trish B.[7] The court denied Lyu's motion for new trial, and sentenced Lyu to three years in state prison on count 1, with a three-year concurrent sentence on count 2, and six months in county jail on each of counts 7 and 9 (stayed pending the state prison commitment). The court also imposed fees and fines, and awarded 733 days of presentence custody credit. Lyu filed a timely notice of appeal.

---

[7] Lyu does not appeal his convictions on two counts of sexual battery.

## DISCUSSION

Lyu argues that there was insufficient evidence to convict him of sexual penetration of an unconscious person and oral copulation of an unconscious person, because the evidence showed Trish B. was not unconscious at the time of his conduct. We agree.

"When assessing a claim of insufficiency of evidence, we review 'the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Stuedemann* (2007) 156 Cal.App.4th 1, 5 [67 Cal.Rptr.3d 13].)

Count 1 charged Lyu with sexual penetration by a foreign object of an unconscious person, in violation of section 289, subdivision (d), which provides as follows: "Any person who commits an act of sexual penetration, and the victim is at the time unconscious of the nature of the act and this is known to the person committing the act . . . shall be punished by imprisonment in the state prison for three, six, or eight years. As used in this subdivision, 'unconscious of the nature of the act' means incapable of resisting because the victim meets one of the following conditions: [¶] . . . [¶] (2) Was not aware, knowing, perceiving, or cognizant that the act occurred." Count 2 charged Lyu with oral copulation of an unconscious person, in violation of section 288a, subdivision (f), which similarly provides as follows: "Any person who commits an act of oral copulation, and the victim is at the time unconscious of the nature of the act and this is known to the person committing the act, shall be punished by imprisonment in the state prison for a period of three, six, or eight years. As used in this subdivision, 'unconscious of the nature of the act' means incapable of resisting because the victim meets one of the following conditions: [¶] . . . [¶] (2) Was not aware, knowing, perceiving, or cognizant that the act occurred." For the purposes of both sections, therefore, Trish B. would have been unconscious at the time if she was "not aware, knowing, perceiving, or cognizant that the act occurred."

The prosecution argued, "Trish [B.] was *not aware, knowing or perceiving or cognizant* that the act of penetration of the fingers or the oral copulation had occurred until it had finally occurred" (italics added), pointing out that Trish B. was on her stomach when Lyu put his finger in her vagina and was unaware he was going to do that, and similarly did not expect him to put his mouth on her vagina. The prosecution asserted that Lyu "clearly knew that . . . she was not aware of any of this . . . and he clearly knew that she was *unaware, knowing, perceiving, or cognizant* that the acts had occurred

until they had occurred." (Italics added.) The trial court noted that "unconsciousness, in the eyes of the law is not necessarily what a layman considers or would define as unconscious, but it includes not being aware, not knowing, or not perceiving, not being cognizant of the act that occurs," and concluded that Trish B. was "unaware of what had occurred until it occurred."

In *People v. Ogunmola* (1987) 193 Cal.App.3d 274 [238 Cal.Rptr. 300], a gynecologist was charged with rape under then section 261, subdivision (4), which prohibited " 'an act of sexual intercourse accomplished with a person not the spouse of the perpetrator . . . . Where a person is at the time unconscious of the nature of the act, and this is known to the accused.' " (193 Cal.App.3d at p. 276.) The gynecologist told two female patients he was going to perform an exam. While their feet were in the stirrups, he inserted a speculum, then inserted his fingers, and finally inserted his penis. Both victims in Ogunmola acknowledged that their recognition of illicit penetration was other than instantaneous.[8] (193 Cal.App.3d at pp. 277–278.) The court stated: "It is settled that a victim need not be totally and physically unconscious in order for the statute defining rape as an act of sexual intercourse accomplished with a person who is at the time 'unconscious of the nature of the act' to apply. [Citation.] In this context, unconsciousness is related to the issue of consent . . . ." (*Id.* at p. 279.) From the testimony of the two patients, the trier of fact could reasonably conclude that "they could not readily perceive his conduct toward them, that neither was aware of the *nature* of the act, i.e., neither consciously perceived or recognized that defendant was not engaged in an examination, but rather in an act of sexual intercourse, until he had accomplished sexual penetration, and the crime had occurred." (*Id.* at p. 281.) Each woman was therefore " 'unconscious of the *nature* of the act' of sexual intercourse committed upon her by defendant, until the same was accomplished, and cannot be said to have consented thereto. Defendant's conduct on each occasion was clearly within the scope of subdivision (4) of Penal Code section 261, and constituted rape."[9] (193 Cal.App.3d at p. 281.) Sections 288a and 289 also "are not limited to victims

---

[8] The first victim testified: " 'I think I was convinced when he initially inserted his penis, but to actually—it took a few minutes to actually believe that this was taking place.' " (*People v. Ogunmola, supra,* 193 Cal.App.3d at p. 277.) That victim also indicated "she could not see defendant's penis or what he was doing, because of the drape, although she could see that he was moving his body forward and backward." (*Ibid.*) The second victim reported these facts: "The nurse who had been present in the room left, and defendant, standing, continued the examination, placing his fingers in the patient's vagina while pressing on her lower abdomen. He moved his fingers in and out of her vagina a number of times, then pushed very hard on her abdomen and leaned forward, whereupon Beatris K. realized he had inserted his penis, rather than his fingers, into her vagina." (*People v. Ogunmola, supra,* 193 Cal.App.3d at p. 278.)

[9] Section 261, subdivision (a)(4) currently defines rape as an act of sexual intercourse accomplished by someone other than a person's spouse "[w]here a person is at the time unconscious of the nature of the act, and this is known to the accused." The statute defines

unconscious in the ordinary or colloquial sense." (*People v. Stuedemann, supra,* 156 Cal.App.4th at p. 6.)

■ Trish B. testified that she was lying facedown when Lyu, without warning, inserted one or two fingers into her vagina, and she hit at him and said, "no." She also testified that when she then turned over onto her back, Lyu abruptly put his mouth on her vagina. There is not substantial evidence to support a conviction under sections 289, subdivision (d)(2) and 288a, subdivision (f)(2). The facts of this particular case do not meet the conditions set forth in section 289, subdivision (d)(2) for a determination of " 'unconscious[ness] of the nature of the act.' " She instantly knew, perceived, and was cognizant that the act occurred. The instant Lyu penetrated her with his finger, she protested, clearly aware of the nature of the act, as her striking Lyu and saying no demonstrates. When Lyu subsequently put his mouth on her vagina, she was instantly aware that "his mouth is down there."

■ We decline the prosecution's invitation that we construe the language of sections 289, subdivision (d)(2) and 288a, subdivision (f)(2) as meaning that the victim "did not see the attack coming and was not aware or cognizant of it until it had occurred." Those subdivisions make no reference to whether a victim sees an attack coming, and further, nothing in the language of the statute suggests that we should imply in statute the words "until it had occurred" such that sections 289, subdivision (d)(2) and 288a, subdivision (f)(2) would read: "Was not aware, knowing, perceiving, or cognizant that the act occurred [until it had occurred]." Absent some indication from the Legislature that it intended the duration of the synaptic process that transpires virtually instantaneously when one is touched to constitute an absence of awareness, knowledge, perception, or cognizance that an act "occurred"—a concept that is generally inconsistent with the plain usage of those words because all awareness, knowledge, perception, or cognizance of external stimuli must stem from some synaptic process—we will not add that meaning to the clear and unambiguous language of the statutes. **(3)** "The first principle of statutory interpretation requires that we turn initially to the words of the statute to ascertain the Legislature's intent. '[I]f " 'the statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it. [Citation.] The plain language of the statute establishes what was intended by the Legislature.' " [Citation.]' " (*People v. Palacios* (2007) 41 Cal.4th 720, 728 [62 Cal.Rptr.3d 145, 161 P.3d 519], quoting *People v. Johnson* (2006) 38 Cal.4th 717, 723–724 [42 Cal.Rptr.3d 887, 133 P.3d 1044].) Here, we see no reason to expand the meaning of the

---

" 'unconscious of the nature of the act' " as "incapable of resisting because the victim meets one of the following conditions: [¶] . . . [¶] (B) Was not aware, knowing, perceiving, or cognizant that the act occurred."

plain language of the statute. Thus, Trish B. was "aware, knowing, perceiving, or cognizant that the act[s] occurred." (§§ 289, subd. (d)(2), 288a, subd. (f)(2).)[10]

The evidence was insufficient to support Lyu's convictions of sexual penetration on an unconscious person and oral copulation on an unconscious person.

## DISPOSITION

The judgment is reversed as to Lyu's convictions for sexual penetration and oral copulation on an unconscious person. In all other respects, the judgment is affirmed.

Mallano, P. J., and Chaney, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 13, 2012, S201853.

---

[10] In *People v. Stuedemann*, the defendant was charged with a violation of section 289, subdivision (d)(3), and section 288a, subdivision (f)(3). (*People v. Stuedemann, supra*, 156 Cal.App.4th at p. 4.) Those subdivisions provide that a victim is unconscious of the nature of the act when the victim " '[w]as not aware, knowing, perceiving, or cognizant of the essential characteristics of the act *due to the perpetrator's fraud in fact.*' . . . The prosecution in this case was based on the theory that [the victim] was unconscious because of [the defendant's] fraud in fact," which was the only theory asserted by the prosecution. (*Id.* at p. 6, italics added.) Concluding that *People v. Ogunmola, supra*, 193 Cal.App.3d 274 was not applicable to the question of unconsciousness because of fraud in fact, the *Stuedemann* court reversed the judgment. (*Stuedemann*, at pp. 9–10.) *People v. Stuedemann* does not control this case, which does not involve unconsciousness because of fraud in fact.