Filed 8/4/14  In re Peter K. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re PETER K., a Person Coming Under the Juvenile Court Law. | B250547 (Los Angeles County Super. Ct. No. FJ48796) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>PETER K.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Benjamin R. Campos, Juvenile Court Referee.  Affirmed.

Mary Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

The juvenile court sustained a November 7, 2012 petition alleging that minor Peter K. committed the offense of rape of an unconscious person (Pen. Code, § 261, subd. (a)(4)).[1] ~(CT 49, 233-234; RT 77)~ The juvenile court declared that minor continued to be a person described by Section 602 of the Welfare and Institutions Code and placed him in the camp-community placement program for six months. ~(RT 83)~ The court declared the offense a felony and stated that the maximum term of confinement should not exceed nine years. ~(CT 233-234; RT 83)~

Minor appeals on the ground that there was insufficient evidence of rape of an unconscious woman, since two essential elements of that offense were not proved.[2]

## FACTS

**Prosecution Evidence**

On August 28, 2010, Aaliyah S. went to "kick it" with some friends, whom she identified as minor, Diego, and Carlos. She and the others "ended up" drinking and smoking marijuana in the apartment of a friend named Luis for approximately two hours. ~(RT 8, 9, 20, 21, 22, 36)~ She felt the effects of the alcohol and marijuana. ~(RT 9)~ At one point, they all went downstairs to the garage and got inside a truck. ~(RT 9, 35)~ Aaliyah was in the back seat smoking marijuana with minor, Carlos, and two other people. ~(RT 10, 22)~ She became sick and left the truck, as did everyone else. ~(RT 10)~ After Aaliyah threw up, she asked if she could go inside a car because she did not want to go to her aunt's house looking "messed up." ~(RT 10-11)~

Minor took her to an old Mercedes that Diego was fixing up. ~(RT 11, 26, 33, 36)~ It was in the back of the parking structure. ~(RT 34)~ Minor left with some other people, and Aaliyah fell asleep in the back seat of the car. ~(RT 11, 33)~ When she woke

---

[1]     All further references to statutes are to the Penal Code unless stated otherwise.

[2]     On April 3, 2014, minor also filed a petition for writ of habeas corpus, case No. B255278, in which he raises the issue of ineffective assistance of counsel. This petition will be considered concurrently with, but separately from, the instant appeal. A separate order will be filed in that matter.

up, she saw a man in a jumpsuit outside the car talking to her. ~(RT 11-12)~ He got into the car and was trying to have her touch him. He was grabbing her hand. He also touched himself in his exposed private area and then her leg. ~(RT 12-13, 28)~ Aaliyah backed into the corner of the car, and the man got out of the car. ~(RT 13, 14, 28)~

Aaliyah saw a black car pull up. She saw minor get out and come over to the car she was in. ~(RT 14)~ Minor had a short, seemingly friendly conversation with the man in the jumpsuit. ~(RT 13, 15, 34)~ Minor left, and the man in the jumpsuit left also. ~(RT 13, 15, 34)~

Aaliyah waited until she was sure the man had gone and then got out of the car. She went to the front of the apartment building and called her mother. ~(RT 15, 29)~ Her mother called the police. ~(RT 29)~ That night, Aaliyah went to the hospital and then to a rape treatment center where she was examined. ~(RT 15-16, 30)~ When she went to the hospital she did not know if she had had sex that night. ~(RT 37)~

Aaliyah had known minor since childhood and believed they were like family. ~(RT 16, 32)~ They had never had a sexual relationship and had never even kissed. ~(RT 16-17)~ She did not give minor permission to have sexual intercourse with her that night. ~(RT 17)~ She was not alone with minor at any point that evening, and he did not ask her to have sex with him. ~(RT 32-33)~ Aaliyah was 15 at the time of the incident and had never been married. ~(RT 19-20)~

Two years later, in 2012, police officers went to speak with Aaliyah. ~(RT 30-31)~ She told them the man in the jumpsuit exposed himself, and she had felt something wet on her leg. She told them he had used some fingers to violate her. ~(RT 31-32)~

The parties stipulated that Aaliyah was treated at UCLA rape treatment center, and a swab of her vagina containing seminal fluid was obtained. ~(RT 40)~ The swab was booked into evidence on December 20, 2012. A buccal swab was taken from minor and the two swabs were sent for analysis. The vaginal swab and buccal swab both contained minor's DNA. The odds of "randomly selecting an unrelated victim of this DNA profile are between 1 and 120 quintillion" and 1 in 580 quintillion.

3

Detective Brenda Salazar was assigned Aaliyah's case in 2012 when police received a DNA hit in the CODIS database. ~(RT 39)~ She interviewed Aaliyah in October 2012. ~(RT 39-40)~ Aaliyah never accused minor of having sexual contact with her. ~(RT 42)~ When Detective Salazar told Aaliyah that one of the young men she was with had sexual contact with her, Aaliyah was shocked and began to cry. ~(RT 43)~

Detective Salazar interviewed minor after informing him of his *Miranda* [3]rights. ~(RT 43-45)~ Minor began by denying any sexual contact with Aaliyah. When confronted with the DNA evidence, he admitted to having consensual sex with her. ~(RT 45)~

**Defense Evidence**

Minor was 15 at the time of the incident with Aaliyah. ~(RT 47)~ He was hanging around with Diego and a young man named Wilson in the apartment complex across the street from Aaliyah's aunt's apartment. ~(RT 47-48)~ When Aaliyah called to him from the window of her aunt's apartment, minor went over to her. ~(RT 48)~ The two of them then went to Luis's apartment with Diego and Wilson. They were drinking and smoking marijuana. Then they all went to a "destroyed" Mercedes Benz that Diego owned. ~(RT 49)~ The car was not drivable and had no windows. ~(RT 50, 57)~

They were all inside the car for 45 minutes to an hour. Then all of them got out and went to the front of the apartment complex. ~(RT 50-51)~ Aaliyah said she was not feeling well, and minor got a cup of water and an Alka Seltzer for her. She drank it and then threw up. ~(RT 51)~ Aaliyah did not ask for a place to lie down, and minor did not know if she got back in the car. He went home 10 or fifteen minutes after Aaliyah was sick. ~(RT 51-52)~ No one was home except his uncle, who was sleeping. ~(RT 52)~

Aaliyah's sister called minor and said her mother wanted to speak with him. Minor went back to Luis's apartment where he encountered Aaliyah's mother, the fire

---

[3]     *Miranda v. Arizona* (1966) 384 U.S. 436, 449.

department, and the police. ~(RT 52)~ The police asked him "a couple of questions in front of everybody." Minor then left. ~(RT 52)~

In November 2012, Detective Salazar arrested minor at his school and took him to the police station. ~(RT 52, 53)~ In the beginning, they did not want to tell him the purpose of the interview. "Some guy" told minor he was being charged with rape and minor "thought he was trying to mess with [him]." ~(RT 53)~ He eventually told police in that interview that he and Aaliyah had sex on August 28, 2010, in the Mercedes. ~(RT 53-54)~ Aaliyah was speaking to him clearly, and she was awake and conscious. ~(RT 54-55)~ He asked her if she wanted to have sex and she said she was on her period. Minor was "pretty drunk" and told her he did not care. She then said she did not care either. ~(RT 55)~ Minor said there was no blood. ~(RT 58)~ Diego and Wilson were having a conversation about 15 feet from the car while minor and Aaliyah had sex. When they were finished having sex, they both got out of the car. All four of them walked to the front of the apartment complex . ~(RT 55, 57)~ Aaliyah was completely conscious and able to walk on her own. ~(RT 55)~ They were just sitting in the front when Aaliyah said she was sick. After Aaliyah took the Alka Seltzer and threw up, she said she felt better, and minor went home. ~(RT 56)~

That was the only time minor and Aaliyah had sex. They would only greet each other after that, but there were no problems between them. ~(RT 58)~ He did not tell the police about it in 2010 because he and Aaliyah had agreed not to tell anyone. ~(RT 60)~ He did not know whom Aaliyah was talking about when she spoke about the man in the jumpsuit. ~(RT 61)~

## DISCUSSION

### I. Minor's Argument

Minor contends that no evidence of solid value established Aaliyah was unconscious or asleep at the time she had sex with appellant. For that reason, the prosecution did not prove minor knew Aaliyah was unable to resist because she was unconscious or asleep. ~(AOB 12)~

5

## II. Relevant Authority

Section 261 defines rape of an unconscious person as follows: "(a) Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: [¶] . . . [¶] (4) Where a person is at the time unconscious of the nature of the act, and this is known to the accused. As used in this paragraph, 'unconscious of the nature of the act' means incapable of resisting because the victim meets any one of the following conditions: [¶] (A) Was unconscious or asleep. [¶] (B) Was not aware, knowing, perceiving, or cognizant that the act occurred. [¶] (C) Was not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraud in fact. [¶] (D) Was not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraudulent representation that the sexual penetration served a professional purpose when it served no professional purpose." (§ 261, subd. (a)(4).)

The jury instruction for a charge of violating section 261, subdivision (a)(4) is CALCRIM No. 1003, which states: "The defendant is charged with raping a woman who was unconscious of the nature of the act in violation of Penal Code Section 261(a)(4). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant had sexual intercourse with a woman; [¶] 2. He and the woman were not married to each other at the time of the intercourse; [¶] 3. The woman was unable to resist because she was unconscious of the nature of the act; [¶] AND [¶] 4. The defendant knew that the woman was unable to resist because she was unconscious of the nature of the act. [¶] Sexual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis. Ejaculation is not required. [¶] A woman is unconscious of the nature of the act if she is unconscious or asleep or not aware that the act is occurring or not aware of the essential characteristics of the act because the perpetrator tricked, lied to, or concealed information from her."

The standard of review in criminal cases applies to juvenile proceedings. (*In re Roderick P.* (1972) 7 Cal.3d 801, 809.) "The California Supreme Court has held, 'Reversal on [the ground of insufficient evidence] is unwarranted unless it appears "that

6

upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" [Citation.]" (*People v. Gaut* (2002) 95 Cal.App.4th 1425, 1430.) "The trier of fact, not the appellate court, must be convinced of the minor's guilt, and if the circumstances and reasonable inferences justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. [Citation.]" (*In re James B.* (2003) 109 Cal.App.4th 862, 872.) "The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

A single witness's testimony is sufficient to support a conviction, unless it is physically impossible or inherently improbable. (Evid. Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181; *People v. Scott* (1978) 21 Cal.3d 284, 296.) "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge . . . to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 403.)

## III.  Trial Court's Ruling

In its ruling, the trial court stated that it was considering the victim's testimony, the parties' stipulation regarding DNA, and the position proffered by the defense. ~(RT 77)~ The court found that the People had proved their case beyond a reasonable doubt. ~(RT 77)~

The court said it knew with certainty that DNA was deposited in the victim. "And that that DNA is unlikely, within the bounds of human understanding, to have come from any place else." The court pointed out that the victim testified she did not know what happened because she was asleep, and that a person can be unconscious of the nature of the act without being totally unconscious. ~(RT 75-76)~ The defense position was that this was a consensual act, but when a victim is intoxicated to a point of unconsciousness, any perceived consent was eviscerated. ~(RT 76)~

7

## IV. Analysis

The record shows that Aaliyah was alone when she fell asleep in the Mercedes. When conscious, the only male she recalled touching her was the man in the jumpsuit. Minor was still in the vicinity of the car when Aaliyah awoke, since she saw him speaking with the man in the jumpsuit before he and the man both left the area. The record also shows that minor's DNA was found in a swab taken from Aaliyah's vaginal area. Aaliyah's testimony established that, if she had sex, she was unaware of it, leading to the conclusion she was asleep or was not cognizant that the act occurred. ~(RT 37)~ Therefore, any sexual contact with minor had to have occurred while she was unconscious. There was thus sufficient evidence from which to infer she was unconscious within the meaning of the statute

With respect to minor's knowledge, *People v. Dancy* (2002) 102 Cal.App.4th 21 concluded that the rape of an unconscious person has two separate mens rea requirements: the defendant must have had both knowledge of the person's unconsciousness and the wrongful intent to engage in an act of sexual intercourse with an unconscious person. (*Id*. at p. 37.) Minor was aware that Aaliyah had been drinking and smoking marijuana for hours. He was also aware she had been unwell. Although he testified that Aaliyah consented, was speaking clearly to him, and was awake and conscious, Aaliyah's testimony indicates otherwise. She testified she was never alone with Peter, and he never asked her to have sex with him. ~(RT 32-33)~ She testified that she did not have sex that night. ~(RT 37)~ Therefore, Aaliyah could not have exhibited the "'positive cooperation in act or attitude pursuant to an exercise of free will'" that would have belied unconsciousness. (*People v. Ogunmola* (1987) 193 Cal.App.3d 274, 279.) There was no indication that she suffered merely from a lapse in memory of consenting to having sex with minor. Aaliyah's memories were clear about events that occurred after she awoke and saw the man in the jumpsuit.

Moreover, Aaliyah testified that she viewed minor as family and had never even kissed minor. Minor admitted to having sex with Aaliyah only after having been caught in a lie. He testified that he and Aaliyah never had sex again and indeed never did more

8

than greet each other after the incident.  Under these circumstances, the trial court drew a reasonable inference that minor's sexual encounter with Aaliyah was accomplished without her knowledge, which obviated any alleged consent, and that minor was well aware she was not conscious of the act.  As stated previously,  the testimony of a single witness is sufficient to support a conviction (*People v. Young*, *supra*, 34 Cal.4th at p. 1181), and it is the exclusive province of the trier to fact to determine the credibility of a witness (*People v. Maury*, *supra*, 30 Cal.4th at p. 403.)

Minor's argument is without merit.

## DISPOSITION

The order appealed from is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

9