Filed 2/28/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>BRIAN STEVEN ICKE,<br><br>      Defendant and Appellant. | A141917<br><br>(Sonoma County<br>Super. Ct. No. SCR-615907) |

Brian Steven Icke, a chiropractor, was convicted by jury of sexual penetration by fraudulent misrepresentation of professional purpose.  (Pen. Code, § 289, subd. (d)(4); hereafter section 289(d)(4).)[1]  The jury found that Icke digitally penetrated a client for a sexual purpose during a chiropractic massage.  Icke argues the trial court erred in rejecting a proposed jury instruction that would have stated he was *not* guilty of violating section 289(d)(4) if he penetrated the client against her will.  We conclude this argument is foreclosed by *People v. Robinson* (2016) 63 Cal.4th 200 (*Robinson*), which recently held the "unconsciousness" requirement of fraudulent misrepresentation of professional purpose crimes is the equivalent of a lack of consent.[2]  Icke also argues his conviction is not supported by sufficient evidence because the victim protested and did not actually believe he was acting for professional purposes at the time of the act.  We conclude that a victim's misgivings do not exonerate a defendant under section 289(d)(4) if the evidence

---

[1] Undesignated statutory references are to the Penal Code.

[2] *Robinson* dealt with charges of sexual battery by misrepresentation of professional purpose.  (§ 243.4, subd. (c); see *Robinson, supra,* 63 Cal.4th at pp. 204, 206.)

1

establishes that the victim allowed a sexual touching to occur because of a representation of professional purpose.

## I. BACKGROUND

Icke was charged with sexual battery by fraudulent misrepresentation of professional purpose (§ 243.4, subd. (c); count 1) and sexual penetration by fraudulent misrepresentation of professional purpose (§ 289(d)(4); count 2). The following evidence was presented at trial.

Jane Doe was a client of Icke's chiropractic practice from April to August 2011 for treatment of injuries caused by a car accident. She received treatment from both Icke and his wife (also a chiropractor), and Doe's treatment included massage. Icke sometimes performed the massages in a back room of the chiropractic office, but he would leave the door partially open and other people would be in the office. Doe's last session was on November 10, 2011.[3] When Doe arrived at the office, Icke told her he was ready to do her final exam. He locked the front door, led her to the back room, and closed the door to the back room. Doe was not concerned about this conduct because "I was with my doctor. I was safe." After performing stress, strength and mobility tests that were usual parts of Doe's treatment, Icke had Doe lie face down on a treatment table and pulled both her pants and underwear down to her knees. Icke never before pulled her underwear down that far, but Doe was not concerned because he never previously touched her in a sexual manner.[4] Icke massaged Doe's thighs with Benzocaine for pain relief. He seemed to linger in a sexual manner, but Doe "was trying to believe that it wasn't that." Icke then "started massaging in an upward motion. And as he got up

---

[3] Doe's last scheduled treatment session was in August 2011, and her injury was declared permanent and stationary in September. Doe, however, continued to experience pain. She e-mailed Icke, who initially said he would wrap up her case without an additional examination, but then arranged an office visit for November 10.

[4] Doe testified it was not Icke's normal practice to pull her underwear down to her knees. A November 11, 2011 police report of the incident stated that Doe said Icke's common practice was to pull her pants and underwear down below her knees. Doe said she actually told police it was common for him to pull only her pants, not her underwear, down to her knees. She never reviewed the police report for accuracy.

higher, he was going faster and he bumped my vagina, my labia, a couple times." Three or four times, Icke's fingers brushed up against Doe's labia majora and minora and Benzocaine got on the inside and outside of the labia minora.[5] Doe was sure Icke's fingers went inside her labia. However, she "thought I was still being treated," and was not sure whether the contact was purposeful or accidental. When the cream started to burn inside and outside her vagina, she told Icke, "You're getting a little too close down there," and, "It's starting to burn down there." Icke stopped and apologized. He asked if Doe wanted him to wipe her off and she said, "No. That's fine." Doe believed she was still under treatment and just wanted to complete the session.

Icke continued the massage on her lower and upper back and unfastened her bra, which was typical during massages if she wore a bra. He asked Doe to turn over, and he massaged an area near her hip that was bothering her. "And then he hesitated and looked down at me and said, 'I love the way you shave your—yourself down there. It must drive the guys crazy.' " She responded, "Actually, I don't do that for anybody else but myself." Icke massaged "back and forth across [Doe's] body on top of [her] pubic bone, pushing really hard back and forth." "It didn't . . . feel like a massage" because of "the way that he was pushing me and pulling." It felt "[l]ike he was just rocking me back and forth." He "then pushed my top up, because my bra was undone, and started really tugging and pushing back and forth" on Doe's breasts. She knew that touching her breasts was not part of her treatment. Icke said, " 'You have the most beautiful nipples,' " and he had "a very odd look in his eyes." Doe became scared, and said, "Are you okay? . . . You went a little too far." Icke apologized and said "he had gone a little further than he should have." Doe said, "Yes, you had." Icke then explained he was having a hard time with his marriage and his kids. He had never previously talked to Doe

---

[5] The November 11, 2011 police report stated that Doe said Icke touched the outside of her vagina. Doe testified that she knew by the time of trial she needed to be more specific. On redirect, she testified that when she referred to the inside of her vagina, she meant her labia; outside her vagina meant the sides of her leg. She then testified that the outside of her vagina was her labia and the inside of her vagina was the area where women insert a tampon.

about his marital problems. Doe felt very scared and told Icke she had to leave for a lunch appointment. When she got off the table, she noticed that Icke appeared to have an erection.

Doe's daughter spoke to Doe shortly after the November 10, 2011 office visit. Doe appeared upset and told her what had occurred. After this conversation, Doe concluded she had been sexually assaulted, and she reported the incident to police the following day. Law enforcement officials testified about discrepancies in statements Doe and her daughter made about the incident and its immediate aftermath. Doe was also impeached with evidence she had filed a civil lawsuit against Icke. Doe disclaimed knowledge of the lawsuit, and her attorney testified she filed the suit without informing Doe. Another woman testified that in 1999, when she was 19 years old, she was molested by Icke during treatment: Icke had massaged her breasts, touched her vaginal area, made sexual comments, and apologized after she objected.

The court instructed the jury on the sexual penetration charge consistent with CALCRIM No. 1048: "The defendant is charged in Count II with the sexual penetration of a person who was unconscious of the nature of the act. To prove the defendant is guilty of this crime the People must prove that, one, the defendant committed an act of sexual penetration with another; two, the penetration was accomplished by using a foreign object [such as a finger]; three, the other person was unable to resist because she was unconscious of the sexual nature of the act because the defendant fraudulently represented that the touching served a professional purpose; and, four, the defendant knew that the other person was unable to resist because she was unconscious of the nature of the act. [¶] . . . [¶] A person is unconscious of the nature of the act if he or she is not aware of the essential characteristics of the act because the perpetrator fraudulently represented that the sexual penetration served a professional purpose when it served no professional purpose."

In closing argument, the prosecutor explained that the sexual battery charge (count 1) was based on Icke's massage of Doe's breasts and the sexual penetration charge (count 2) was based on Icke's insertion of his fingers inside Doe's labia. On count 2, the

4

prosecutor argued, "[Doe] testified that [Icke] pierced or penetrated her labia majora and minora somewhere around three or four times. And she testified that she still believed that the defendant was treating her. . . . [¶] . . . [Icke] used therapy massage techniques used before during treatments to make the victim feel on November 10th that this was all part of treatment. . . . [¶] . . . [¶] . . . [Doe] had no idea that his acts were intentional and sexual in nature when he was massaging her and penetrated her." Therefore, the prosecutor argued, Icke was guilty of sexual penetration by fraudulent misrepresentation of professional purpose.

Defense counsel argued in closing that fraudulent misrepresentation of professional purpose was inapplicable to this case. Instead, it applied to the case of a "Dr. Feelgood [who] was telling women, I can cure your cancer by having intercourse with you. . . . [¶] That's what this statute is about[,] . . . that somehow you're convincing or pretending this person that the touching you're going to do is going to help you get better. . . . I need to rub your breasts because it's going to make your back feel better. I need to put my hands there because it's going to make your hip feel better. [¶] There's no assertion [here], even by Jane Doe, that that was the case. In fact, she said, well, when he started lingering there, I was thinking it was getting more sexual than not. And by the time he rolled me over, I was convinced it wasn't treatment anymore."

In rebuttal, the prosecutor argued, "The law doesn't require an express, verbal statement from the defendant to the victim. . . . What the law says is you can look at the defendant's conduct to see if, without words, if his actions somehow fraudulently represented to the victim that the touching was done for . . . some sort of professional purpose when, in fact, it wasn't. It doesn't have to be by words. [¶] . . . [Here,] he represented to the victim that the movements and the touching that he was doing were all part of the treatment."

During deliberations, the jury asked, "Is the chiropractor required to ask *permission* prior to touching the intimate parts of the patient's body?" The court responded that this question was "not directly related to an issue that you must decide"

5

and directed the jury's attention to the previously-provided jury instructions on fraudulent misrepresentation of professional purpose.

The jury found Icke not guilty of count 1 (§ 243.4, subd. (c)), but guilty of the lesser-included offense of assault (§ 240). The jury found him guilty of count 2, penetration by fraudulent misrepresentation of professional purpose (§ 289(d)(4)). The court sentenced Icke to six years for the sexual penetration and a concurrent one-year term for the assault.

## II.    DISCUSSION

Icke challenges only his conviction for sexual penetration. We first review the requisite elements of this offense.

Section 289(d)(4) is violated if a defendant "commits an act of sexual penetration, and the victim is at the time unconscious of the nature of the act and this is known to the person committing the act or causing the act to be committed . . . ." (§ 289, subd. (d).) " 'Sexual penetration' is the act of causing the penetration, however slight, of the genital or anal opening . . . for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device," which includes "any part of the body, except a sexual organ." (§ 289, subd. (k)(1), (2).) "[U]nconscious of the nature of the act" for a violation of section 289(d)(4) means the victim "[w]as not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraudulent representation that the sexual penetration served a professional purpose when it served no professional purpose." (§ 289(d)(4).)

Section 289(d)(4) was enacted in 2002 "to expand the circumstances under which a defendant may be prosecuted for fraudulently inducing a victim to consent to sexual conduct." (*People v. Pham* (2009) 180 Cal.App.4th 919, 925 (*Pham*).) The statute "was part of a comprehensive amendment" to five sex crime statutes. (*People v. Bautista* (2008) 163 Cal.App.4th 762, 773; see *Robinson, supra,* 63 Cal.4th at p. 208 [noting Sen. Bill No. 1421 (2001–2002 Reg. Sess.) enacted or amended §§ 243.4, subd. (c) (sexual battery), 261, subd. (a)(4)(D) (rape), 286, subd. (f)(4) (sodomy), 288a, subd. (f)(4) (oral copulation), and 289(d)(4) (sexual penetration)].) The legislative

6

history "includes extensive discussion of the common law distinction between fraud in fact, which was deemed to vitiate consent, and fraud in the inducement, which was deemed not to do so. [Citations.] [¶] At common law, fraud in fact occurs when the defendant obtains the victim's consent to an act but then engages in a *different* act. Fraud in the inducement is committed when the defendant uses misrepresentations to gain the victim's consent to an act, and then performs that *same* act. [Citation.] In [*People v.*] *Ogunmola*, a gynecologist who raped his victims during pelvic examinations was guilty under a fraud in fact theory. His victims consented to pelvic examinations, not sexual intercourse, and did not realize the "nature of the act" [(i.e., that the doctor inserted his penis rather than a medical instrument into their vaginas)] until it had already occurred. ([*People v.*] *Ogunmola* [(1987)] 193 Cal.App.3d [274,] 281, italics omitted.) Conversely, in *Boro* [*v. Superior Court*] the defendant tricked his victim into having intercourse as a treatment for disease. The victim consented to an act of intercourse, accepting Boro's representation that it served a medical purpose. *Boro* [*v. Superior Court* (1985)] 163 Cal.App.3d [1224,] 1226–1227.) The court held that Boro committed only fraud in the inducement, and therefore was not guilty of rape. (*Id*. at p. 1229.)" (*Robinson*, at pp. 208–209.)

"The proponents of [the new law], motivated by incidents in which patients were sexually abused under the guise of medical treatment, wanted to ensure that 'sex offenses committed by fraudulent inducement involving a purported professional purpose can be prosecuted,' even without proof of the victim's fear." (*Robinson, supra,* 63 Cal.4th at p. 209.) In 2016, the Supreme Court held that the new law reflected "the Legislature's intent that this kind of fraud in the inducement would henceforth be deemed to vitiate consent. . . . Section 261.6, which defines ' "consent" ' for purposes of sections 261, 286, 288a, and 289, specifies that the term means 'positive cooperation in act or attitude pursuant to an exercise of free will. The person must act freely and voluntarily and *have knowledge of the nature of the act* or transaction involved.' (Italics added.) The term 'unconscious of the nature of the act,' as used in the statutes addressed by Senate Bill [No.] 1421, is based on this understanding of the consent requirement. [Citation.]

7

[¶] Thus, the Legislature has refined the consent requirements for sex crimes to include not only the ordinary circumstance where consent is never given, but also more complicated circumstances where it is obtained through deceit." (*Robinson,* at pp. 209–210, fn. omitted.)

To establish a sex crime by misrepresentation of professional purpose, the government must prove, inter alia, the defendant misrepresented the professional purpose of an act and the victim was deceived by this misrepresentation and thus unconscious of the sexually-motivated nature of the act. (*Pham, supra,* 180 Cal.App.4th at pp. 926–928.) "In keeping with the statute's intent to criminalize sexual acts committed under the guise of professional services, it only makes sense to consider the totality of the defendant's conduct—not just his verbal statements—in determining whether he fraudulently represented the nature of his actions. After all, actions often speak louder than words . . . . [¶] We must also be mindful of the fact that, when it comes to treating their patients, physicians occupy a position of implicit trust. . . . 'There is an inherent trust and confidence which a patient seeking medical care places in the [professional] and upon which a patient relies in allowing the [professional] access to the most intimate parts of the body.' " (*Id.* at pp. 926–927.)

A.      *Instructional Error*

Icke first argues the trial court erred in rejecting a nonstandard jury instruction he proposed. We conclude his argument is foreclosed by *Robinson, supra,* 63 Cal.4th 200.

Icke requested what he described as a "pin-point instruction" that would have added the following language to CALCRIM No. 1048: "To be guilty of this crime, the defendant must make a fraudulent representation that results in the victim's submitting to the sexual penetration. The defendant is not guilty of this crime if he commits a sexual penetration against the victim's will." The court denied the request.

The premise underlying Icke's requested instruction is that section 289(d)(4) is not violated unless the victim consents to the sexual conduct. *Robinson* clearly establishes that Icke's proposed instruction was legally incorrect because a victim's unawareness of the nature of a sexual act is the *equivalent* of the victim's lack of consent. (*Robinson,*

8

*supra,* 63 Cal.4th at pp. 209–210.)  Therefore, it would have been error for the trial court to instruct that "[t]he defendant is not guilty of this crime if he commits a sexual penetration against the victim's will."  Icke further argues his proposed instruction would have clarified the law in response to the jury's question during deliberations—"Is the chiropractor required to ask *permission* prior to touching the intimate parts of the patient's body?"  Icke's proposed instruction would not have been an appropriate response because, again, it was legally incorrect.

B. *Sufficiency of the Evidence*

  Icke's primary argument on appeal is that his section 289(d)(4) conviction is not supported by sufficient evidence.  The People persuasively argue to the contrary, and we affirm the conviction.

  "In reviewing the sufficiency of the evidence to support a criminal conviction, we review the record ' "in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citation.]  We do not reweigh the evidence or revisit credibility issues, but rather presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence."[6] (*Pham, supra,* 180 Cal.App.4th at pp. 924–925.)

  Icke first argues the evidence was insufficient to prove he fraudulently misrepresented to Doe that touching her labia was for a professional purpose.  He argues he never "claim[ed] any medical necessity for touching her 'too close' to her vaginal area, but stopped and apologized when she told him she felt . . . a burning sensation inside her labia.  It was undisputed . . . that [he] never claimed that touching that area was part of any treatment."  Icke misapprehends the fraudulent misrepresentation element.  As

---

  [6] Although Icke notes he moved for dismissal at the close of the prosecution's case-in-chief, he does not argue on appeal the trial court erred in denying that motion.  Therefore, we consider all of the trial evidence when considering whether the evidence supports the conviction.  (See *People v. Cole* (2004) 33 Cal.4th 1158, 1212–1213.)

9

noted *ante*, the representation need not be an express verbal statement; physical circumstances and a course of conduct may indirectly communicate a false professional purpose. (See *Pham, supra,* 180 Cal.App.4th at pp. 926–927.) In our view, the representation also need not be specific as to the sexual touching. Here, Icke never specifically told Doe that he touched her labia for a professional purpose, but the context in which the touching occurred—an appointment with Icke for the specific purpose of providing Doe a final chiropractic treatment session as the culmination of a several-month course of such treatment that included regular chiropractic massage—was sufficient to communicate a purported professional purpose for *all* of the touching Icke engaged in while Doe lay on a treatment table.[7]

*Pham* is instructive. In that case, the reviewing court found a similar context of chiropractic treatment communicated a professional purpose even absent any express statements about the defendant's purpose in touching the sexually-sensitive areas of the victims' bodies: "[I]t readily appears Pham used his position as a medical professional in order to disguise his lewd intentions and perpetrate crimes. Julie, Elsa and Toan all came to him with the expectation of receiving medical treatment for their various injuries. When they arrived at his office, they signed in and had their vital signs checked, as would be expected in a medical setting. They understood Pham would be touching and moving their bodies in various ways to diagnose and treat their injuries. . . . [¶] With respect to Julie, he waited until her third treating session to commence any wrongdoing. That way, she had the experience of two normal visits on which to base her trust in Pham as a genuinely concerned medical professional. Even on that third occasion, Pham did not immediately signal his true intentions. Instead, he began treating Julie by massaging and adjusting her neck. Then he worked his way down her chest until he was massaging her breasts. And when he finally slid his hands underneath her clothing, his fondling was not

---

[7] Ample evidence also supports the finding that the touching was in fact done with a sexual purpose, in particular Icke's later sexually explicit comments to Doe during the treatment, his subsequent acknowledgement he had acted inappropriately, and his apparent erection.

overtly sexual. Rather, he felt his way around the breast, as if he were conducting a normal breast exam. In so doing, Pham continued to give the appearance his actions were medically related. There is no evidence he displayed anything but a professional demeanor during this or any of the other exams at issue." (*Pham, supra,* 180 Cal.App.4th at p. 927.)

Icke next argues the evidence is insufficient to support a conviction because Doe "never consented to any touching of her labia as she instantly recognized when the touching in her chiropractic treatment became sexual." Taken literally, this "consent" argument is foreclosed by *Robinson*, which holds legal consent is absent under the fraudulent misrepresentation theory. (*Robinson, supra,* 63 Cal.4th at pp. 209–210.) However, Icke's argument, as we understand it, appears to be that section 289(d)(4) requires proof the victim *allowed* a sexual act to be performed (rather than immediately protesting or resisting the act) because of the defendant's misrepresentation, even though as a matter of law the victim's submission to the sexual act would not amount to legal consent. In other words, the defendant would be guilty only if the victim both acquiesced in the sexual acts and did so because the victim actually believed the acts were part of the professional treatment.

We believe Icke overstates what section 289(d)(4) requires,[8] but even if we were to assume Icke is correct, we would still find the evidence sufficient to support the sexual penetration conviction. Doe testified that Icke's fingers bumped up against and went into her labia three or four times while he was massaging her thigh. Before that happened,

_____

[8] In *Robinson*, the Supreme Court noted that the Court of Appeal had "accepted the Attorney General's concession that the evidence was insufficient with respect to [two of the four victims] because they never believed defendant's touchings served a professional purpose." (*Robinson, supra,* 63 Cal.4th at p. 206.) The defendant offered the victims free facials and massages, and touched their breasts and genitalia during the treatment. The two victims immediately protested or attempted to leave, and at least one apparently testified she never believed the defendant's conduct had a professional purpose. (*Id.* at pp. 205–206.) The Supreme Court, however, did not discuss the propriety of the concession, and did not reach the sufficiency of evidence issue in this regard.

11

she thought Icke had been lingering during the massage in a sexual manner, but "was trying to believe that it wasn't that" and she "was still being treated." When Icke touched Doe's labia, she still was not sure whether the contact was purposeful or accidental. She told Icke he was getting too close and areas of her labia were burning, and Icke stopped, apologized, and offered to wipe her off. The jury could have found that Icke's conduct falsely communicated to Doe that the touching was accidental, during the rendering of professional treatment, rather than sexual. As a result, Doe allowed the treatment session to continue. These facts support a finding that Doe allowed the touching of her labia to occur because she believed Icke had a professional purpose in engaging in this conduct.

We reject any suggestion that a defendant must represent and persuade the victim that the sexual touching itself served a specific professional purpose. Icke repeatedly argues there was no evidence he represented or Doe ever believed that his touching her labia was an intended part of her chiropractic treatment. Icke argues it would be absurd for Doe to so believe because rubbing Benzocaine on the inside of labia is painful and has no plausible therapeutic purpose. However, the statute focuses on the defendant's representation of *purpose* not the defendant's representation of the *scope of treatment*: it requires proof the defendant in fact acted with a sexual purpose and the victim was unaware of that sexual purpose because the defendant falsely represented he was acting with a professional purpose. (§ 289(d)(4).) If the defendant represented he had a professional purpose in conducting treatment, such as a legitimate chiropractic massage, and falsely claimed he negligently or accidentally touched the victim's genitalia, when in fact he did so intentionally with a sexual purpose, the elements of the statute are satisfied. The evidence here supported the jury's finding that Icke in fact touched Doe's labia with a sexual purpose, but falsely led her to believe he did so accidentally while acting with a professional purpose.

We also reject any suggestion that the victim's unconsciousness of the sexual nature of the act must be absolute. Confusion, rather than clarity, is not surprising when a professional unexpectedly touches the sexual parts of the victim's body during purported professional treatment. Confusion or doubt about the purpose of the touching

12

does not preclude a conviction as long as the jury finds beyond a reasonable doubt that the victim allowed the touching to occur because of the defendant's fraudulent misrepresentation of a professional purpose. In *Pham*, for example, one of the victims testified "when Pham touched her breasts, . . . she felt 'instant shock' and was 'automatically very scared.' While this shows she did not expect Pham to touch her breasts, it does not necessarily prove she was aware of his sexual intentions at the time. In fact, she testified she was not sure what was happening at that moment. She obviously became very uncomfortable after the touching, but that could simply have been a visceral reaction to the touching itself. . . . [¶] . . . [She] did not try to end the exam after Pham touched her breasts . . . [and she] delay[ed] in reporting Pham's conduct . . . ." (*Pham, supra,* 180 Cal.App.4th at p. 929.) The reviewing court acknowledged "a certain degree of uncertainty in [the victim's] mind as to what Pham's intentions were," but nevertheless found the evidence sufficient to support the conviction: "Pham's status as a medical provider, his professional demeanor, and the presence of an assistant during [the victim]'s exam all created the impression his actions were professionally, not sexually, motivated. Given all the circumstances surrounding the incident, the jury could reasonably find [the victim] was unconscious of the sexual nature of Pham's acts at the time they were occurring." (*Ibid.*)

Another court similarly upheld a fraudulent misrepresentation conviction despite evidence the victim doubted the defendant's professional purpose. In *Bautista*, a religious leader digitally penetrated the vagina of a teenage religious follower purportedly to test her virginity. (*Bautista, supra,* 163 Cal.App.4th at p. 767.) The victim told the defendant she did not like what he was doing, sobbed as she exited the room, and immediately reported the act to her friend. (*Id.* at pp. 767–768.) She also complained that the defendant, prior to the time of the penetration, " 'was always hugging her in a morbid way.' " (*Id.* at p. 768.) Nevertheless, the court held there was sufficient evidence the victim was unconscious of the sexual nature of the penetration. Although the victim testified the penetration was not something the defendant was supposed to do as a pastor, she "also explained that she thought defendant touched her only to check her virginity

13

and that she thought it was appropriate due to his role in the church community. . . . [Her] testimony must be viewed in the context of the entire trial. . . . A jury . . . could conclude that [she] was misled regarding the purpose of defendant's actions and believed that he had a legitimate professional reason for confirming her virginity." (*Id.* at p. 781.)

Icke relies on two inapposite cases. In *People v. Stuedemann* (2007) 156 Cal.App.4th 1, the court reversed convictions for sexual penetration and oral copulation on an unconscious person (§§ 288a, subd. (f)(3), 289, subd. (d)(3)). The defendant had touched a client's breasts, digitally penetrated her vagina, and orally copulated her while purporting to provide a massage. (*Id.* at pp. 4–5.) The court explained the convictions could not stand because "[the victim] did not permit Stuedemann to orally copulate or digitally penetrate her *believing* the copulation or penetration was something other than a sexual copulation or penetration; instead, she immediately recognized the acts for what they were and expressed her nonconsent." (*Id.* at p. 8, italics added.) *Stuedemann* is distinguishable. In that case the crimes charged were fraud-in-fact offenses, requiring proof that the victim *consented* to an act different from the act that was actually performed on him or her. (*Stuedemann*, at pp. 4, 7.) As explained *ante*, section 289(d)(4) was added to the Penal Code specifically to provide an alternative basis for liability when the victim permitted an act to occur (without legally consenting to the act) because of a fraudulent misrepresentation that it was being performed for a professional rather than a sexual purpose. (See *Robinson, supra,* 63 Cal.4th at pp. 209–210.) Moreover, the facts of *Stuedemann* would not support a conviction under Icke's view of section 289(d)(4) because the victim immediately protested and tried to stop the sexual conduct. (*Stuedemann*, at p. 5.) Here, the evidence supports a finding that Doe allowed Icke to touch her labia, rather than immediately protesting and stopping the treatment, because of his fraudulent misrepresentation of professional purpose.

Icke also cites *People v. Lyu* (2012) 203 Cal.App.4th 1293, another case involving a masseuse who digitally penetrated and orally copulated a client who promptly protested. (*Id.* at p. 1296.) Like *Stuedemann*, *Lyu* involved different charges:

14

sections 289, subdivision (d)(2) and 288a, subdivision (f)(2), which require proof the victim was "not aware, knowing, perceiving or cognizant that the act occurred," not a sexual crime by fraudulent misrepresentation of professional purpose. (*Id.* at p. 1299.) Again, the client's immediate protest also distinguishes the case.

C.      *Due Process Claim*

Finally, Icke argues the trial court's "expanded interpretation" of the crime to apply it to the facts of his case was a violation of his due process rights. Again, the Supreme Court has held the lack-of-consent element in this context consists of the victim's unawareness of the nature of the sexual act because of fraudulent misrepresentation of professional purpose. (*Robinson, supra,* 63 Cal.4th at pp. 209–210.) The statute was not improperly expanded at Icke's trial by virtue of either the jury instructions or the jury's application of the law to the facts of Icke's case.

### III.      DISPOSITION

The judgment is affirmed.

15

_____

BRUINIERS, J.

WE CONCUR:

_____

SIMONS, Acting P. J.

_____

NEEDHAM, J.

A141917

16

Superior Court of Sonoma County, No. SCR615907, Rene A. Chouteau, Judge.

Marylou Hillberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Kathleen A. Kenealy, Acting Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Catherine A. Rivlin and Roni Dina Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.