Filed 6/29/15  P. v. Reed CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARSHALL REED, JR.,<br><br>    Defendant and Appellant. | A139727<br><br>(Humboldt County<br>Super. Ct. No. CR1201535) |

Defendant Marshall Reed, Jr., appeals from a conviction, following trial to the court, of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[1] while personally inflicting great bodily injury (§ 12022.7).  Defendant was sentenced to a total of six years in state prison.  We conclude defendant's conviction is supported by substantial evidence and therefore affirm the judgment.  However, we direct the trial court to modify the abstract of judgment to reflect the correct amount of presentencing credits.

**BACKGROUND**

A two-count information charged defendant with attempted murder and assault with a deadly weapon.  Each count included the special allegation under section 12022.7, subdivision (a), that defendant personally inflicted great bodily injury on the victim, Michael Foreman.

Defendant and Foreman were long-term occupants of a motel in Eureka, California.  They resided two rooms apart and had known each other a few months, but were not on good terms.  One day, Foreman and a friend, Carolyn Whiffing, were in

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

Foreman's room.  Defendant came by and began speaking aggressively with Whiffing, who was seated in a chair.  Foreman got angry, told defendant to stop badgering Whiffing and to leave, and thrust a knife blade into the wall above his bed as a warning to defendant.  Defendant threw an iron at Foreman, missed, and then started to run off.  Foreman chased, defendant turned around, and the two started wrestling and then punching.  Foreman got the better of defendant, and realizing he might be cutting off defendant's air supply, asked defendant if he had had enough.  The two stood up and Foreman held defendant against the wall.  Foreman asked "[a]re you done?" and defendant said " '[y]es,' " so Foreman let go and went back to his room.

As Foreman was closing his door, defendant kicked it open, cursed at Foreman, and, according to Foreman, "started stabbing" Foreman.  One neighbor heard Foreman scream " 'I'm stabbed.' "

Foreman never saw what was stabbing him, rather he felt he was being stabbed with "something" and felt pinches.  Whiffing saw blood and underhanded stabbing motions, but, like Foreman, did not see the weapon.  Nonetheless, Foreman was stabbed five times:  in his left side, puncturing his left lung; in his left side, by his ribs or stomach; under his right armpit; in his right forearm; and in his back.  Foreman fell to his bed.

Foreman gave somewhat conflicting testimony about where Whiffing was (either in the chair or near his side as he fell), even though Whiffing testified at trial that she remained in her chair until the fight was over and did not remember telling police she was so close defendant fell onto her.  Regardless, after the attack, Foreman told her to call the police.  After a discussion with Foreman about her likely having an outstanding warrant, she left.  Whiffing recalls tending to Foreman's wounds.  Foreman does not recall this.  Whiffing did have Foreman's blood on her.  Foreman did not believe Whiffing could have stabbed him, and Whiffing denied attacking Foreman.  Defendant, when he later spoke to police, hypothesized Whiffing had stabbed Foreman.

Responding to a call about the disturbance, the motel manager came out of his office to check on the situation and saw defendant pounding on the door to room 208.

2

Defendant told the manager everything was fine. The manager then joined the crowd gathering at room 214, Foreman's room. Before the emergency response personnel arrived, Foreman told a neighbor who came to assist, and also the motel manager, that defendant was the attacker. At Foreman's request and while he was still awaiting medical assistance, the neighbor placed a phone call to Foreman's father. Although Foreman did not speak directly to his father, his father heard someone saying "he didn't see who stabbed him."

Foreman's doctor testified to "stab wounds," including a chest wound that penetrated the lung and required drainage and another, the back wound, that nearly reached the spinal column. The injuries were life threatening.

Police officers found defendant crouched in the corner of a bathtub in the bathroom of room 207, a room that was not his. Blood was not found on defendant's clothes and the weapon used to injure Foreman was not identified.

According the prosecution's expert, it would be possible for someone who stabbed another to have no blood on them: the victim's delayed bleeding or primarily internal bleeding, blood being absorbed by the victim's clothing, or the assailant's prompt exit, could all produce that result. A defense expert agreed, but thought it unlikely in this case.

After a court trial, the court found defendant not guilty of attempted murder, but guilty of count 2, assault with a deadly weapon. It also found defendant had personally inflicted great bodily injury. The court sentenced defendant to a total of six years, three years for the crime and three years for the enhancement. He was given 677 days of presentence credits: 589 for actual time served and 88 for conduct credits.

## DISCUSSION

On appeal, defendant argues he was deprived of due process because substantial evidence does not support either the "deadly weapon" element of assault with a deadly weapon or the sentence-enhancing allegation he personally inflicted great bodily injury.

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of

3

solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *People v. Johnson* (1980) 26 Cal.3d 557, 578 . . . .) The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 317–320 . . . .)" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11; see also *People v. Watkins* (2012) 55 Cal.4th 999, 1019–1020; *People v. Boyce* (2014) 59 Cal.4th 672, 691 [applying the same standard to a special circumstance allegation]; *People v. Lyu* (2012) 203 Cal.App.4th 1293, 1298–1299 [applying same standard following court trial].) We focus on the evidence that exists and do not dwell on what the prosecution might have proved. (*People v. Story* (2009) 45 Cal.4th 1282, 1299.) " ' "The standard of review is the same in cases in which the People rely mainly on circumstantial evidence." ' " (*People v. Jones* (2013) 57 Cal.4th 899, 960–961 [if circumstances reasonably justify a finding, an appellate court's opinion that those same circumstances could reasonably justify a contrary finding does not warrant a reversal].)

### *Assault with a Deadly Weapon*

Assault with a deadly weapon requires proof defendant wielded a deadly weapon. (§ 245, subd. (a)(1).) Defendant contends there is not substantial evidence he did so, given no one, not even the victim, saw a knife or other implement during the attack.

Use of a weapon, however, can be sufficiently established by circumstantial evidence. (*People v. Godinez* (1992) 2 Cal.App.4th 492, 499–500 ["There was little doubt the attackers in fact used at least one (if not more than one) knife, given the seven stab wounds suffered by the victim."]; *People v. Gutierrez* (1934) 140 Cal.App. 720, 721 ["the nature of the stab wound which destroyed the eye was sufficient to prove that the assault was committed with a deadly weapon, even if there had been no direct testimony that a knife was seen in the hand of the defendant at the time of the assault"].)

4

Foreman testified to being "stabbed" with "something" and feeling "pinches." A witness heard Foreman scream out he was being stabbed. Whiffing saw defendant make underhanded stabbing motions. Foreman's doctor testified to "stab wounds," including a chest wound that penetrated the lung and required drainage and another, the back wound, that nearly reached the spinal column. The injuries were life threatening. Thus more than ample evidence supports the trial court's finding that defendant wielded a deadly weapon, knife or otherwise.

***Personal Infliction of Great Bodily Harm***

"Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." (Pen. Code, § 12022.7, subd. (a).) Defendant again contends there was not substantial evidence he inflicted the most severe wounds—that is, the chest wound that punctured Foreman's lung or the deep back wound that barely missed Foreman's spinal cord. Defendant suggests Whiffing may have stabbed Foreman "on purpose or, more likely, accidentally" while trying to help him.

Yet there was ample evidence defendant, not Whiffing, stabbed Foreman. Foreman testified to it, and, immediately after the incident, told the motel manager and a neighbor that defendant was to blame. Defendant was found by police hiding in someone else's room. Prior to the final, violent altercation, defendant and Foreman had been trading verbal barbs, wrestling, and punching; in contrast, Whiffing and Foreman were having a friendly conversation. There was no evidence of any animosity between Whiffing and Foreman. While defendant and Foreman were in that final, violent fight, Whiffing either remained in her chair or came over to Foreman just before he fell down. As to Foreman's father's testimony about hearing someone say "he didn't say who stabbed him," the trial court could have reasonably concluded that Foreman's father meant the *neighbor* said *he* did not see the attack or that the father was confused or misled given the second-hand relaying of information over the phone right after the attack.

Defendant makes much of the possibility that defendant inflicted only some of Foreman's stab injuries, while Whiffing (with her own blade) dealt the most serious two blows (on opposite sides of Foreman's body, his chest and back) as Foreman fell into Whiffing or into the bed. The possibility seems quite unreasonable. But even if it were how events unfolded, it would make no difference.

"[A] defendant personally inflicts great bodily harm only if there is a direct physical link between his own act and the victim's injury," and "someone who does not strike or otherwise personally use force upon the victim does not qualify for enhanced punishment where the personal infliction of harm is required." (*People v. Modiri* (2006) 39 Cal.4th 481, 495.) "However, . . . enhanced sentencing treatment" is appropriate "where [the defendant] joins others in actually beating and harming the victim, and where the precise manner in which he contributes to the victim's injuries cannot be measured or ascertained." (*People v. Modiri* (2006) 39 Cal.4th 481, 495.) The People need not trace a fist to a particular punch or a weapon to a particular injury. (*Id.* at p. 497.) All participants in a group attack risk enhanced sentencing. (*Ibid.*) Additionally, a defendant personally inflicts injury when a victim is injured while struggling to break free from a defendant's attack (*People v. Elder* (2014) 227 Cal.App.4th 411, 418, 420–421), or when a defendant, even accidentally, causes injury to another in a two-person collision, as in the typical car accident (see *People v. Guzman* (2000) 77 Cal.App.4th 761, 764). Under these authorities, even if Whiffing injured Foreman in a group attack, or accidentally as Foreman fell, defendant could still be subject to a personal infliction enhancement.

### *Presentence Credits*

This court may correct an error in calculating presentence credits. (*People v. Duran* (1998) 67 Cal.App.4th 267, 270.) Defendant and the People agree defendant should have been awarded an additional day of presentence credit for actual time served, apparently because 2012 was a leap year and this was not taken into account. Defendant should therefore be awarded 590 days, instead of 589 days, for actual time served.

## DISPOSITION

The judgment is affirmed, except the trial court is directed to modify the abstract of judgment to reflect 590 days of credit for actual time served.

_____
Banke, J.


We concur:


_____
Humes, P. J.


_____
Margulies, J.

7