Filed 9/28/21  P. v. Fleming CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C091270 |
| Plaintiff and Appellant, | (Super. Ct. No. 18CF04578) |
| v. | |
| KEVIN ANDREW FLEMING, | |
| Defendant and Respondent. | |

The People appeal from an order granting defendant Kevin Andrew Fleming's motion under Penal Code section 995[1] to dismiss the information after finding that the prosecution did not produce substantial evidence of the charged sexual assault crimes. The People argue sufficient evidence supported the magistrate's decision to hold defendant to answer the charges, and we agree.  Accordingly, we will reverse the order

---

[1]     Undesignated statutory references are to the Penal Code.

1

granting defendant's section 995 motion as to counts 1 and 2, and remand the matter for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Police investigation*

During the October 2018 preliminary hearing, Officer Abigail Madden testified that in November 2017 she responded to a report of sexual assault and interviewed the victim. Madden eventually interviewed the victim multiple times. The victim had been attending a "progressive bicycle party" in July 2017 during which she traveled from home to home consuming alcohol and food. She eventually ended up at a barbeque at the home of her husband's coworker. During the course of the day, she had five to six alcoholic drinks.

The victim did not feel well, so she went to the master bedroom and started "do[zing] in and out while being ill." The victim told Madden that "due to her intoxication level, she had been vomiting . . . in the bathroom, and then alternating between waking up[,] vomiting and kind of passing out, having fitful sleep."

The victim was resting on the bed when defendant and another man came into the bedroom. She believed they were laughing at her. A female friend later told police that at one point she found the two men in the room while the victim was sleeping. She also later saw defendant walking toward the bedroom, and she told him to stay away from the victim.

The victim was "in that kind of fitful intoxication floating sleep" and lying on her side when she thought she felt someone touch her buttocks and the back of her leg. The person then pushed her swimsuit aside and inserted his fingers in her vagina more than once. Once she realized this was "really happening" and that she was not dreaming, she reached out to try to push the hand away. She "struggled a bit as her limbs felt heavy in getting control of them." She then recognized defendant (whom she knew) as the person who was touching her. Defendant then left the room. Madden understood the victim to

2

mean she woke up when defendant touched her, and pieced together the details as she awoke.

The next day, defendant sent several text messages to the victim. Defendant asked how she was and said, "Ha, I fingered you—I fingered you last night, and you loved it." Horrified and embarrassed, the victim immediately deleted the text so no one else would see it. That same day, defendant sent her other texts that were sexual in nature. Defendant later left the victim a voicemail apologizing to her.

Madden confronted defendant about the incident. Defendant said he believed the victim was intoxicated, and he did not deny that he had digitally penetrated her at the party. He also did not deny sending text messages to the victim. In her report, Madden wrote that defendant denied touching the victim, but Madden testified that he actually said he did not remember touching her.

B.      *The prosecutor's interview of the victim*

The prosecutor also interviewed the victim in Officer Madden's presence, and a copy of the transcript was provided to the court. The victim said she had "a lot to drink" the day of the incident, and it "hit" her suddenly at the barbeque. She was "not naïve to alcohol" and had "quite a tolerance." But this was unlike anything she had ever experienced, and she felt "drugged" and "heavy." She threw up multiple times in the bathroom and then laid down on the bed. She closed her eyes and rested, trying to calm down so she would not throw up again.

A female friend came in to check on the victim, and the victim said she needed to sleep it off. At one point, defendant and another male came into the bedroom and talked and laughed. The victim thought that she threw up again, and then went back to lie down. She was lying curled up on her side, with her face toward the edge of the bed. She did not put the covers over her. She stated that she "started to finally relax and be able to kinda, you know, get into a little doze." She wanted to avoid going home until after her children went to bed that evening, so they would not see her intoxicated. She

dozed off with her eyes closed, and was "not fully awake." Still, she was "arousable" and not in a "comatose state." She did not feel like she was asleep and snoring.

The victim could not remember if she was awoken by defendant's presence, him saying something, or him touching her. She stated, "I remember opening my eyes and he had his hand like on my thigh . . . and he had his hand kinda going up the back of my—like my—my buttocks, . . . and he went under the bathing suit." Defendant then inserted his finger into her vagina several times. She was "probably still dozing off" and did not immediately realize what was happening. But then she "kind of like woke up" and told defendant, "No, don't, don't!" She tried to move her arms to push his hand off, but she had trouble because her limbs still felt heavy. Defendant then took his hand away and left the bedroom. The victim then struggled to leave the bedroom to lie down on the couch in the living room.

The victim clarified that she could not exactly recall when she woke up, but she thought it might have been before defendant penetrated her. She stated that "his touch is what[ ] kinda startled [her]." Still, she also said during the interview that the situation was "fluid" and happened "very quick[ly]," taking less than a minute. She therefore was not really sure what specifically caused her to wake up.

C.    *Prior sexual assault evidence*

Over defendant's objection, the magistrate heard evidence of defendant's prior sexual misconduct pursuant to Evidence Code sections 1101, subdivision (b), and 1108. A woman (J.D.) told Madden that in April 2017 she had too much to drink while at defendant's home for a social event. She felt uncomfortable driving home, so she agreed to spend the night in defendant's guest room. While she was asleep, she woke up to defendant on top of her, grinding his pelvis on her. She felt his erect penis through the blankets. She immediately pushed him off, and he left the room. She had a friend pick her up and was so upset and afraid that she left the house without her purse or shoes.

4

An investigator with the district attorney's office interviewed seven women who said they had received unwanted sexual communication from defendant. Four of those women also had unwanted or nonconsensual physical sexual contact by defendant.

One of those women, K.G., told the investigator that one night 12 years prior, she went out drinking with defendant and some other friends. She returned to a friend's house and fell asleep in a bed with her boyfriend. Defendant fell asleep on the bedroom floor. K.G. woke up to feeling fingers being inserted into her vagina and realized it was defendant. She told him "no" and pushed him away. A few days later, defendant sent her a text message saying, "Oh, you wished my fingers were inside you again. You liked that." Ashamed and embarrassed, K.G. told no one about the incident at the time. She later told her sister, who encouraged her to report it.

D.    *Magistrate holds defendant to answer; charges; defendant's motion to set aside the information*

In January 2019, the magistrate found probable cause existed and held defendant to answer to a charge of sexual penetration of an unconscious or sleeping person. (§ 289, subd. (d).) In so doing, the magistrate implicitly rejected defendant's argument that the prosecution had failed to establish that the victim was unconscious, asleep, or not fully aware that the act occurred. Defendant was subsequently charged with sexual penetration with a foreign object of an unconscious victim (count 1; § 289, subd. (d)) and assault with intent to commit sexual penetration with a foreign object of an unconscious victim (count 2; § 220, subd. (a)(1)). Defendant pleaded not guilty to both counts.

In September 2019, defendant filed a motion under section 995 to dismiss the amended information. The People filed an opposition. In November 2019, the trial court granted defendant's motion, finding the evidence was insufficient to establish the victim was unconscious or asleep. The trial court noted the victim was unclear as to whether she was asleep and said she had conscious awareness of defendant's actions. She could hear

5

what was going on and was also aware defendant touched her thighs and buttocks and pushed aside her swimsuit. The People appealed.

DISCUSSION

I

The People argue the trial court erred in granting defendant's motion to dismiss the information because the magistrate could have reasonably inferred that defendant (1) sexually penetrated the victim at a time when she was unable to resist because she was asleep (§ 289, subd. (d)) and (2) assaulted the victim with the intent to sexually penetrate her at a time when she was unable to resist (§ 220). According to the People, even though the victim made conflicting statements, the evidence still showed that the victim was in a light sleep stage, which still falls under section 289. She said she was dozing off at the time of the incident, was in a fitful sleep, had her eyes closed, woke up when the penetration occurred, and resisted only after the penetration occurred. Defendant counters that we must define asleep as in an "unconscious state," and contends the evidence established the victim was awake before the sexual penetration or assault.

A. *Standard of review and applicable law*

Under section 995, the superior court shall set aside an information if the "defendant has been committed without reasonable or probable cause." (§ 995, subd. (a)(2)(B).) " '[I]n proceedings under section 995 it is the magistrate who is the finder of fact; the superior court has none of the foregoing powers, and sits merely as a reviewing court; it must draw every legitimate inference in favor of the information, and cannot substitute its judgment as to the credibility or weight of the evidence for that of the magistrate. [Citation.] On review by appeal or writ, moreover, the appellate court in effect disregards the ruling of the superior court and directly reviews the determination of the magistrate . . . .' [Citations.]" (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141 (*Gonzalez*).) Our role is to "decide whether there is probable cause to hold the defendant[ ] to answer, i.e., whether the evidence is such that 'a reasonable person could

6

harbor a strong suspicion of the defendant's guilt.' " (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1072.)

" 'Insofar as the . . . section 995 motion rests on issues of statutory interpretation, our review is de novo.' [Citation.] ' " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning.' " ' [Citation.] '[W]e consider the language of the entire scheme and related statutes, harmonizing the terms when possible.' [Citations.]" (*Gonzalez, supra*, 2 Cal.5th at p. 1141.)

A violation of section 220 occurs when a person "assaults another with intent to commit" a sexual act prohibited under section 289. Assault is defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240 [defining the general crime of assault].)

Section 289, subdivision (d) prohibits acts of sexual penetration when "the victim is at the time unconscious of the nature of the act and this is known to the person committing the act or causing the act to be committed." The subdivision defines " 'unconscious of the nature of the act' " as "incapable of resisting" because the victim meets one of four conditions, including that the victim "[w]as unconscious or asleep" or "[w]as not aware, knowing, perceiving, or cognizant that the act occurred." (§ 289, subd. (d)(1) & (2).)

As courts have explained, section 289, subdivision (d)'s definition of "unconscious of the nature of the act" is "not limited to victims unconscious in the ordinary or colloquial sense." (*People v. Stuedemann* (2007) 156 Cal.App.4th 1, 6; see also *People v. Lyu* (2012) 203 Cal.App.4th 1293, 1300 [" 'It is settled that a victim need not be totally and physically unconscious in order for the statute . . . to apply' "].) Instead, the term encompasses victims who are "incapable of resisting" because they are asleep, unconscious, or otherwise unaware of the act. (§ 289, subd. (d).) We reject

defendant's invitation to define the term "asleep" narrowly, since "there is no bright line that distinguishes consciousness from sleep." (*Burdine v. Johnson* (S.D.Tex. 1999) 66 F.Supp.2d 854, 865.)

Here, the magistrate could reasonably infer that the victim was only partially conscious when defendant briefly touched her buttocks and pushed aside her swimsuit, and did not become fully awake until moments later, when she realized he was digitally penetrating her. The victim told Officer Madden that she had been having a "fitful sleep," and was "do[zing] in and out while being ill." The entire incident took place in less than a minute, and although she was somewhat aware of defendant's movements, she did not realize that she was not dreaming until defendant digitally penetrated her. Even at that point, she struggled to use her arms to push defendant away.

In addition, the magistrate heard evidence that defendant texted the victim the next day and bragged about "finger[ing]" her, and then left a voicemail apologizing. The magistrate also heard evidence that defendant had previously engaged in unwanted sexual conduct with other women, including grinding his pelvis on one sleeping woman, and digitally penetrating another sleeping woman.

Although the victim may have said some things that conflict with the above, it is not our role to reconsider the victim's credibility or reweigh her statements. (*Gonzalez, supra*, 2 Cal.5th at p. 1141.) Viewing the evidence in the light most favorable to the information, as we must (*Lexin v. Superior Court, supra*, 47 Cal.4th at p. 1072), we are satisfied that there was sufficient evidence from which the magistrate could have concluded that there was probable cause that the victim was "unconscious of the nature of the act," and incapable of resisting at the moment of penetration. (§ 289, subd. (d).)

Under the circumstances, we conclude the trial court erred in granting defendant's motion to dismiss the information with respect to the charges of violating section 289, subdivision (d), and section 220.

## DISPOSITION

The trial court's order dismissing the information is reversed and the matter is remanded for proceedings consistent with this opinion.


                                                                     KRAUSE , J.


We concur:


MURRAY , Acting P. J.


RENNER , J.