Filed 9/25/24  P. v. Prudnikov CA3

## <u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C099129 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE003491) |
| v. | |
| ANDREY PRUDNIKOV, | |
| Defendant and Appellant. | |

After a jury trial, defendant Andrey Prudnikov was convicted of two counts of raping Haley Doe.  On appeal, he challenges the sufficiency of the evidence of one of his convictions, contends the trial court erred in failing to provide a lesser included instruction, and claims his consecutive sentence on count two was unauthorized.  He further requests we modify the criminal protective order issued at the time of sentencing.  We shall modify the judgment to impose the consecutive sentence on the forcible rape conviction and order the modification of the protective order, but otherwise affirm.

## LEGAL AND FACTUAL BACKGROUND

On or around May 19, 2020, Haley Doe celebrated her birthday at her friend's house. Doe's friend threw a birthday party for her and approximately 20 to 25 people attended the party. Her friend lived in the back of the house and the friend's brother, Prudnikov, lived in the garage. During the party, Doe drank an unknown amount of alcohol and used cocaine. Prudnikov attended the party, but he generally stood around quietly or stayed in the garage. The party lasted until May 21, but Doe didn't have any alcohol or cocaine after the night of the 20th. Sometime the morning of May 21, after most everyone had left, Prudnikov smacked Doe on her butt. Doe told him "I don't like that. Don't do that." Prudnikov appeared to laugh it off. Doe left the house, but later returned.

After returning to her friend's house, Doe sat on the couch and watched Netflix on her phone while she waited for her boyfriend to come over. She was wearing a pair of leggings, a zip-up workout top, and underwear. Doe fell into a deep sleep on the couch. Doe later awoke because she felt something heavy on top of her that smelled like alcohol and cigarettes. At this point, she knew a person was on top of her, but she did not know the person's identity; the room was dark, and the person had a blanket over his face. She assumed it was her boyfriend and told the person to get off of her. She felt the person put pressure on her chest with his head, then noticed that she was no longer wearing her pants and underwear. She said, "before it even happened, I had felt . . . tapping, like, as if . . . someone was . . . trying to . . . enter inside" her. It felt like pressure from an erect penis against her vagina, which the person rubbed up and down over her clitoris, vagina, and between her "lips." She described the motion by moving her hand up and down as if she were "paint[ing] a wall." She clarified: "That's what woke me up was the tapping, the tapping feeling and the weight and everything." She later reiterated that she was unconscious while her pants and underwear were removed and "I did not wake up until I felt the initial pressure, and like, his head in my chest, that's when I finally woke up."

2

The person then pushed his penis inside her vagina and used his hand to move his penis back and forth approximately two or three times. Doe told the person to "get off of [her]," and he replied, "Shh." Doe kneed the person and pushed him off of her.

The person fell off the couch and landed on his knees. The blanket fell away, and Doe realized that it was Prudnikov. Prudnikov's pants and boxers were pulled down to his knees. Doe grabbed the blanket and ran into a bedroom at the back of the house, where another friend was asleep. Doe screamed that she was just raped.

Doe called her father, told him that she had been raped, and asked if he could pick her up. Doe's father called 911 and law enforcement arrived at Doe's location about the same time as her father. An officer collected her clothes, and she subsequently underwent a medical exam.

Dr. Angela Vickers testified that she had examined Doe for evidence of sexual assault. Prudnikov's DNA was found on Doe's mons pubis and vulva.[1] In her testimony, Dr. Vickers explained the external part of the female genitalia is comprised of the mons pubis, which is on top of the pelvic area, where a woman would have pubic hair, and the labia majora, also known as the vulva, which are the outer "lips." The internal genitalia includes the labia minora, which are just inside the labia majora, the clitoris, and the area between the "lips."

Prudnikov testified in his own defense. According to Prudnikov, Doe had no clothes on her bottom half when she made sexual advances toward him. When he refused to have sex with her, Doe yelled, "Well, then, now I'll tell everyone that you raped me." Doe pulled the blanket over herself and ran to a friend's room and told the friend that Prudnikov had raped her.

---

[1] Evidence of DNA results was provided by Ryan Nickel, a criminologist with the District Attorney Laboratory of Forensic Services.

The jury was instructed with CALCRIM No. 1003, which instructed them that to prove Prudnikov guilty of rape of an unconscious person, "the People must prove that: [¶] 1. The defendant had sexual intercourse with a woman; [¶] 2. The woman was unable to resist because she was unconscious of the nature of the act; [¶] AND [¶] 3. The defendant knew that the woman was unable to resist because she was unconscious of the nature of the act. [¶] *Sexual intercourse* means any penetration, no matter how slight, of the vagina or female genitalia by the penis. Female genitalia includes the labia majora, labia minora, clitoris or vestibule of the vagina. Ejaculation is not required. [¶] A woman is unconscious of the nature of the act if she is unconscious or asleep or not aware that the act is occurring."

On May 1, 2023, a jury found Prudnikov guilty of one count of forcible rape (Pen. Code, § 261, subd. (a)(2); count one)[2] and one count of rape of an unconscious person (§ 261, subd. (a)(4); count two) and found a factor in aggravation that Doe was particularly vulnerable to be true.[3] The trial court subsequently sentenced Prudnikov to an aggregate term of 12 years in state prison, comprised of six years (middle term) on count one, and a consecutive six years (middle term) on count two. It also issued a criminal protective order pursuant to section 646.9, subdivision (k).

Prudnikov filed a timely notice of appeal.

---

[2]    Undesignated statutory references are to the Penal Code.

[3]    The jury found the aggravating factor that the crimes involved great violence to be not true and the prosecutor dismissed the third allegation regarding Prudnikov's prior convictions in a bifurcated proceeding.

4

## DISCUSSION

### I

*Rape of an Unconscious Person*

Prudnikov contends there was insufficient evidence to convict him on the charge of rape of an unconscious person. We disagree.

In reviewing the sufficiency of the evidence to support a criminal conviction, we review the record in the light most favorable to the judgment to determine whether it contains substantial evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) We do not reweigh the evidence or reevaluate the credibility of witnesses, but rather presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. (*Ibid.*) A judgment will be reversed only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Campbell* (2020) 51 Cal.App.5th 463, 484.) Under this standard, the defendant bears an "enormous burden" in demonstrating the evidence was insufficient to support a conviction. (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.)

The crime of rape of an unconscious person requires proof of (1) an act of sexual intercourse, (2) where the victim "is at the time unconscious of the nature of the act," and (3) "this is known" by the defendant. (§ 261, subd. (a)(4).) "Sexual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis." (CALCRIM No. 1003.) "Since the origin of the rape and sodomy statutes, the courts have strictly adhered to the statutory principle that a 'penetration,' however slight, 'completes' the crime. [Citations.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 329.) "[A]ppellate courts have long held that vaginal penetration does *not* require penetration of the vagina. [Citation.] Rather, '[p]enetration of the external genital organs is sufficient to constitute sexual penetration and to complete the crime of rape even if the

5

rapist does not thereafter succeed in penetrating into the vagina.' " (*People v. Paz* (2017) 10 Cal.App.5th 1023, 1037.) Moreover, "unconscious of the nature of the act" is defined to include "unconscious or asleep." (§ 261, subd. (a)(4)(A).) But, "[i]t is settled that a victim need not be totally and physically unconscious in order for [section 261, subdivision (a)(4),] defining rape as an act of sexual intercourse accomplished with a person who is at the time 'unconscious of the nature of the act[,]' to apply." (*People v. Ogunmola* (1987) 193 Cal.App.3d 274, 279.) Rather, section 261, subdivision (a)(4) uses the phrase "unconscious of the nature of the act" to mean " 'incapable of resisting' because the victim . . . '[w]as unconscious or asleep' or '[w]as not aware, knowing, perceiving, or cognizant that the act occurred.' " (*People v. Miranda* (2021) 62 Cal.App.5th 162, 173, review granted June 16, 2021, S268384,[4] citing § 261, subd. (a)(4)(A)-(B).) "One who is unconscious as defined in section 261, subdivision (a)(4), necessarily does not act freely and voluntarily with knowledge of the nature of the act." (*People v. Morales* (2013) 212 Cal.App.4th 583, 591.)

Prudnikov argues that Doe's testimony does not establish penetration occurred while she was asleep rather than after she woke up. We determine the evidence sufficient to conclude Doe was unaware of the nature of the act. We find *People v. Miranda, supra*, 62 Cal.App.5th 162, review granted, and *People v. Ogunmola, supra*, 193 Cal.App.3d 274 instructive. In *Miranda*, the defendant was convicted of several sex offenses, including two involving an unconscious victim. On appeal, the defendant argued that there was not substantial evidence that the victim was unconscious at the time of the conduct because

___

**4**      Review was granted on an issue related to that raised in *People v. Williams* (2020) 47 Cal.App.5th 475, review granted July 22, 2020, S262229. The California Supreme Court recently issued its decision and held that the Legislature's decision to make One Strike offenders categorically ineligible for youth offender parole consideration under section 3051, subdivision (h) was sufficiently justified to satisfy equal protection concerns. (*People v. Williams* (Aug. 29, 2024, S262229) ___ Cal.5th ___[2024 Cal. LEXIS 5013, at *51-*52, 2024 WL 3978624, at *18].)

she was awake during some of the conduct. Noting that complete unconsciousness is not required, the appellate court disagreed. The court explained that the requirement that the victim be " 'unconscious of the nature of the act' " means that the victim must be " 'incapable of resisting' " because, inter alia, he or she " '[w]as unconscious or asleep' " or " '[w]as not aware, knowing, perceiving, or cognizant that the act occurred.' " (*Miranda*, at p. 177; see also *People v. Pham* (2009) 180 Cal.App.4th 919, 928 ["The unconsciousness requirement does not require proof the victim was totally and physically unconscious during the acts in question"].)

Similarly, here, there is substantial evidence to support the jury's verdict that penetration occurred while Doe was asleep or unaware that the act was occurring. The evidence showed that Doe was asleep when her pants and underwear were removed. She testified that "the tapping feeling" of Prudnikov's erect penis against her vagina, along with feeling the weight of him on top of her, woke her up. Prudnikov rubbed his penis over her clitoris and between her "lips." Doe reiterated that "I did not wake up until I felt the initial pressure, and like, his head in my chest, that's when I finally woke up." From this testimony, the jury could reasonably infer that while she was asleep, Prudnikov had penetrated her outer genitalia to rub against her internal genitalia.

Even if she were partially awake during the actual penetration, the evidence still supports the conviction as case law instructs the victim need not be totally or physically unconscious for the statute to apply, rather, the victim must be unconscious of the nature of the act. In *People v. Ogunmola, supra*, 193 Cal.App.3d 274, the appellate court upheld two convictions for rape of an unconscious person when the evidence demonstrated that, unbeknownst to the victims, the doctor who was conducting a pelvic examination placed his penis inside each of the victims. The court concluded that the trier of fact could reasonably conclude that each of the victims was " 'unconscious of the *nature* of the act' of sexual intercourse committed upon her by defendant, until the same was accomplished, and cannot be said to have consented thereto." (*Id*. at p. 281.) Thus, the *Ogunmola* court

held that "Defendant's conduct on each occasion was clearly within the scope of subdivision (4) of Penal Code section 261, and constituted rape." (*Ibid*.)

So too here. Doe was asleep when Prudnikov came into the room, presumably removed her pants and underwear, and climbed on top of her to rub his exposed erect penis on her external genitalia. Even if Doe was technically awake in the small fraction of time before Prudnikov actually penetrated the external portion, the evidence that she was coming out of a deep sleep and was confronted with confusing factors such as missing garments and an unknown person rubbing his penis against her was sufficient to allow a jury to logically infer that the sexual intercourse took place while she was unconscious of the nature of the act and cannot be said to have consented thereto. (*People v. Ogunmola, supra*, 193 Cal.App.3d at p. 281; see *People v. Cook* (2021) 59 Cal.App.5th 586, 590 [" ' "We 'must accept logical inferences that the jury might have drawn from the circumstantial evidence' " ' "].)

II

*Lesser Offense Instruction*

Prudnikov argues that even if there was legally sufficient evidence supporting the conviction on count two, there was also sufficient evidence that Prudnikov only attempted to penetrate Doe. Thus, he argues, the trial court erred when it failed to sua sponte instruct on the lesser included offense of attempted rape of an unconscious person. We conclude the trial court did not err.

The Legislature has provided that a "jury . . . may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense." (§ 1159.) This language explicitly allows prosecutors to try the accused of both charged offenses and attempts to commit those offenses. (*People v. Fontenot* (2019) 8 Cal.5th 57, 63.) Additionally, a trial court is required to instruct a jury on a necessarily included offense if there is substantial evidence that the defendant is guilty only of the lesser and not the greater. (*People v.*

8

*Birks* (1998) 19 Cal.4th 108, 118.)  However, a defendant is not *entitled* to instruction on lesser offenses "which are not necessarily included in the charged."  (*Id*. at p. 119.)  "Rather, a jury need only be instructed on offenses that the prosecution actually charged either explicitly or implicitly (because they were necessarily included within explicitly charged offenses)."  (*People v. Hicks* (2017) 4 Cal.5th 203, 211.)  To determine whether one offense is a lesser included offense of another, courts apply either the elements test or the accusatory pleading test.  (*Fontenot*, at p. 65.)  Here, because the charge that alleged Prudnikov committed a completed rape of an unconscious person "merely 'incorporate[d] the statutory definition of the charged offense without referring to the particular facts' in detail, we 'must rely on the statutory elements' alone."  (*Ibid.*, citing *People v. Robinson* (2016) 63 Cal.4th 200, 207.)  "The elements test is satisfied if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, such that all legal elements of the lesser offense are also elements of the greater.  (*People v. Smith* (1998) 64 Cal.App.4th 1458, 1471.)  In other words, ' "[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former." '  (*People v. Reed* [(2006)] 38 Cal.4th [1224,] 1227; see *People v. Pearson* (1986) 42 Cal.3d 351, 355.)"  (*People v. Bailey* (2012) 54 Cal.4th 740, 748.)

We determine de novo whether one crime is a lesser included offense of another.  (*People v. Licas* (2007) 41 Cal.4th 362, 366.)

While it might intuitively seem an attempt would naturally be a lesser included offense, this is not necessarily so.  "Attempts are only lesser included offenses if the sole distinction between the attempt and the completed offense is completion of the act constituting the crime.  (*People v. Ngo* (2014) 225 Cal.App.4th 126, 156.)  If the attempt requires a heightened mental state, as is the case with attempts of many general intent crimes, the attempt requires proof of an additional element and is therefore not a lesser included offense.  ([*People v.* ]*Bailey, supra*, 54 Cal.4th at p. 753 ['where the attempted offense includes a particularized intent that goes beyond what is required by the

9

completed offense,' it is not a lesser included offense]; *People v. Strunk* (1995) 31 Cal.App.4th 265, 271 ['an attempt is a specific intent crime and does not fit within the definition of a necessarily included offense of a general intent crime']; *Ngo*, at p. 156 ['when the completed offense is a general intent crime, an attempt to commit that offense does not meet the definition of a lesser included offense under the elements test because the attempted offense includes a specific intent element not included in the complete offense'].)" (*People v. Braslaw* (2015) 233 Cal.App.4th 1239, 1248.)

Such is the case before us. Rape of an unconscious person is a general intent crime. To commit rape of an unconscious person the perpetrator must have the intent to have sexual intercourse with that person, knowing the victim is unconscious. (*People v. Dancy* (2002) 102 Cal.App.4th 21, 37.) Attempted rape, however, is a specific intent crime. (*People v. Clark* (2011) 52 Cal.4th 856, 948.) Thus, attempted rape of an unconscious person has a specific intent element that is not included in the underlying crime and is therefore not a lesser included offense of rape of an unconscious person.

Prudnikov cites *People v. Braslaw, supra*, 233 Cal.App.4th 1239 as support for his position that attempted rape of an unconscious person is a lesser included offense of the completed crime of rape of an unconscious person. He misreads *Braslaw.* The issue in *Braslaw* was whether the crime of attempted rape of an intoxicated person is a lesser included offense of rape of an intoxicated person. The *Braslaw* court reasoned that rape of an intoxicated person (§ 261, subd. (a)(3)) is a general intent crime and requires both (1) intent to engage in sexual intercourse and (2) either actual knowledge of the intoxicated victim's incapacity or negligent belief the victim had the capacity to consent. (*Braslaw*, at pp. 1248-1249; see *People v. Dancy, supra*, 102 Cal.App.4th at p. 37 [under § 261, subd. (a)(4), a defendant must have intent to have intercourse, plus constructive knowledge victim is unconscious of nature of act].)

Attempted rape, in accord with section 21a governing attempts, "has two elements: (1) the specific intent to commit the crime of rape and (2) a direct, although

10

ineffectual, act toward its commission." (*People v. Clark, supra*, 52 Cal.4th at p. 948.) "The mere intent to have sexual contact is not a sufficiently culpable mental state for attempted rape." (*People v. Braslaw, supra*, 233 Cal.App.4th at p. 1249.)

*Braslaw* went on to conclude "In short, for a jury to find defendant guilty of attempted rape of an intoxicated person, the prosecution must prove an intent above, beyond, and apart from the mental state required for the completed crime." (*People v. Braslaw, supra*, 233 Cal.App.4th at p. 1251.)

So too here. An attempt to commit the crime of rape as charged here, requires a specific intent to rape an unconscious person that is not required in the completed crime of rape of an unconscious person.

### III

### *Sentencing*

Prudnikov argues that the court erred in imposing consecutive sentences, as his conviction for rape of an unconscious person is not eligible for consecutive sentences under section 667.6. We agree with the People that, because Prudnikov's conviction for forcible rape was eligible for consecutive sentences under section 667.6, resentencing is not required. Finally, we agree with the parties that the criminal protective order must be modified to reflect the proper statutory authority and expiration date.

A. Consecutive Sentences

At the sentencing hearing, the court rejected the argument that section 654 applied, and instead stated: "[T]hey are two separate acts. One occurs when she's unconscious, and the second rape occurs, forcible rape, when she is awake. And thus, I do think that the full term consecutive sentencing is appropriate in this case." The court further commented on certain facts of the case that indicated a premeditation on Prudnikov's part, finding that "justice does require a pretty significant sentence for this case." The court stated: "Could this be an upper term case? It could be. But there's also consecutive sentencing on this that will impact as well. [¶] And so in light of all

11

that, it is the judgment and sentence of the Court that for a violation of Penal Code Section 261 (a) (2), the Court will impose, in this case, a midterm sentence . . . . [¶] . . . [¶] As for Count 2, the 261 (a) (4), the Court will impose an additional consecutive full term consecutive sentence of midterm of six years, for a total aggregate sentence in this case of 12 years in prison." The court also stated it was issuing a 10-year protective order, forbidding Prudnikov from having contact with Doe.

Prudnikov argues that consecutive sentences are improper under section 667.6, subdivision (c) because the trial court imposed a consecutive sentence on his conviction under section 261, subdivision (a)(4), which is not one of the enumerated qualifying offenses under section 667.6, subdivision (e).

"When a person is convicted of two or more crimes," California law generally requires a court to determine "whether the terms of imprisonment . . . shall run concurrently or consecutively." (§ 669, subd. (a).) As relevant here, several statutes affect how a court imposes concurrent or consecutive sentences. Under section 1170.1, which is part of the determinate sentencing law, a court imposing determinate, consecutive sentences for two or more felonies is required to impose an "aggregate term of imprisonment for all these convictions," which is the sum of the "principal term," the "subordinate term[s]," and any enhancements. (§ 1170.1, subd. (a).)

Section 1170.1 governs most determinate sentencing. For certain sex offenses, however, the Penal Code establishes two alternative sentencing frameworks. First, under section 667.6, subdivision (c), "a full, separate, and consecutive term may be imposed for each violation of an offense specified in subdivision (e) if the crimes involve the same victim on the same occasion. A term may be imposed consecutively pursuant to this subdivision if a person is convicted of at least one offense specified in subdivision (e)." This is "[i]n lieu of the term provided in Section 1170.1." (§ 667.6, subd. (c).) Because the decision to determine whether sentences will run consecutively or concurrently is

discretionary, we review a trial court's decision under an abuse of discretion standard. (*People v. Bradford* (1976) 17 Cal.3d 8, 20; see § 669, subd. (a).)

Forcible rape (§ 261, subd. (a)(2)) is a specified offense under subdivision (e) but rape of an unconscious person (§ 261, subd. (a)(4)) is not. (§ 667.6, subd. (e).) If the defendant has been convicted of multiple crimes, including at least one violent sex crime, as defined in section 667.6 "and the sentencing court has decided to impose consecutive sentences, the sentencing judge must then determine whether to impose a full, separate, and consecutive sentence under section 667.6[, subdivision ](c) for the violent sex crime or crimes instead of including the violent sex crimes in the computation of the principal and subordinate terms under section 1170.1[, subdivision ](a)." (Cal. Rules of Court, rule 4.426(b).) Under the discretionary sentencing choice pursuant to section 667.6, subdivision (c), the trial court must demonstrate it is aware of its discretion to sentence the defendant under either section 667.6 or section 1170.1 and provide a statement of reasons. (*People v. Pena* (1992) 7 Cal.App.4th 1294, 1317.)

Prudnikov maintains that the court may not impose the sentence for rape of an unconscious person to run consecutively to the forcible rape because the former is not an offense that qualifies for consecutive sentences under section 667.6, subdivision (c). However, regardless of the order in which the court sentenced Prudnikov, the forcible rape conviction authorized a discretionary consecutive sentence under section 667.6, and the trial court's intent to run the sentences consecutively was clear and supported by reasons stated in the record. Thus, we disagree that, under the facts of this case, the court's imposition of the consecutive sentence on the rape of an unconscious person requires resentencing.

The plain language of the statute requires only one offense specified in section 667.6, subdivision (e) because a "term may be imposed consecutively . . . if a person is convicted of at least one offense specified in subdivision (e)." Here, Prudnikov was found guilty of forcible rape, an offense qualifying for consecutive sentences. Because

there was "at least one offense specified in subdivision (e)" of section 667.6 that involved the same victim on the same occasion as Prudnikov's conviction for rape of an unconscious person, the sentence is consistent with section 667.6, subdivision (c). (Cf. *People v. Belmontes* (1983) 34 Cal.3d 335, 345 [rejecting the argument that "a consecutive sentence for any offense not listed in section 667.6, subdivision (c) would necessarily be designated as a subordinate term, and the court would have discretion to sentence under section 667.6, subdivision (c) only as to additional sex offenses"].)

Even if the court technically erred in imposing the sentence for rape of an unconscious person consecutive to the term imposed on the forcible rape rather than the other way around, the result is a difference without a distinction. Because there are only two convictions, it makes no practical difference which offense runs consecutive to the other since full terms may be properly imposed and there is no distinction between the applicable sentencing ranges for the two offenses such that it would matter in which order the sentence is served. (See § 264, subd. (a) [subject to exceptions not applicable here, the sentence for any rape conviction is a prison term for three, six, or eight years].)

Nevertheless, to avoid potential confusion, we modify the judgment to impose the six-year term for the forcible rape conviction on count one to run consecutively to the six-year term for count two. The trial court's intended sentence of 12 years is otherwise affirmed.

B. Protective Order

Section 136.2, subdivision (i)(1) authorizes the trial court to issue a protective order at the time of sentencing for up to 10 years when a defendant has been convicted of rape. Section 646.9, subdivision (k)(1) authorizes the court to issue a protective order for up to 10 years when a defendant has been convicted of stalking.

At the sentencing hearing, the court discussed Prudnikov's two rape convictions and stated it was issuing a 10-year protective order. However, the protective order lists the authority for the order as pursuant to subdivision (k) of section 646.9 rather than

pursuant to subdivision (i)(1) of section 136.2.  The order also fails to include the 10-year expiration date.

When there is a discrepancy between the oral pronouncement of a sentence and the written order, the court's oral pronouncement controls.  (*People v. Jones* (2012) 54 Cal.4th 1, 89.)

We agree with the parties that the protective order must be modified to cite to section 136.2, subdivision (i)(1), rather than section 646.9, subdivision (k), to properly reflect Prudnikov's rape convictions.  We further agree with the People that the order should be modified to indicate its expiration in 10 years.

## DISPOSITION

We modify the judgment to impose a consecutive sentence on count one, rather than count two.  The clerk of the court is ordered to issue an amended abstract of judgment and a corrected written protective order to reflect that it is issued under section 136.2, subdivision (i)(1) and will expire 10 years after the date of sentencing.  The judgment and sentence are otherwise affirmed.

 

 

 

_____/s/_____
EARL, P. J.

 

 

We concur:

 

 

_____/s/_____
ROBIE, J.

 

 

_____/s/_____
RENNER, J.